**UNITED STATES of America**

v.

**CUTTER LABORATORIES, INC.**

**No. CIV–1–76–11.**

United States District Court,
E. D. Tennessee, S. D.

May 25, 1976.

John L. Bowers, Jr., U. S. Atty., Ray H. Ledford, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff.

Miller, Martin, Hitching, Tipton, Lenihan & Waterhouse, R. Allan Edgar, Chattanooga, Tenn., for defendant.

## MEMORANDUM and ORDER

**FRANK W. WILSON, Chief Judge.**

This is an action pursuant to section 1319(b) and (d) of Title 33 of the Federal Water Pollution Control Act to collect civil money penalties for alleged violations of a National Pollutant Discharge Elimination System (NPDES) permit. The case is presently before the Court upon a motion by defendant to dismiss, or alternatively for summary judgment on the grounds that the Court lacks jurisdiction of the case.

Plaintiff alleges that pursuant to section 1342(a) of the Federal Water Pollution Control Act and after opportunity for a public hearing, it issued a permit to defendant on February 13, 1974 for the discharge of pollutants into Tannery Branch, a tributary to Citico Creek. Part I, Section A(1) of the permit established effluent limitations applicable to the discharge of pollutants by defendant after June 15, 1975. The plaintiff alleges that the defendant has not achieved the effluent limitations as of January 12, 1976, the date of the filing of the complaint, and thus plaintiff sues for a civil penalty under section 1319(d) of the Act. Defendant contends that the government cannot maintain its present action under section 1319 because the Administrator of the Environmental Protection Agency has yet to establish effluent limitations or effluent limitation guidelines as required by sections 1311(b) and 1314(b) of the Act. Plaintiff contends that the action is maintainable because section 1342(a) of the Act gives the Administrator authority to issue enforceable NPDES permits upon such conditions as the Administrator may determine necessary to carry out the provisions of the

Act prior to the establishment of effluent limitations or effluent limitation guidelines. Since the jurisdictional issue raised by the defendant involves almost exclusively the several sections of the Act heretofore mentioned, it is appropriate to first consider the statutory language contained in these sections.

The Federal Water Pollution Control Act, enacted on October 18, 1972, establishes a comprehensive program designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" in pursuit of a "national goal that the discharge of pollutants into navigable waters be eliminated by 1985." 33 U.S.C.A. § 1251(a)(1) (Supp. 1976). The "Standards and Enforcement" part of the Act begins by stating under section 1311:

"(a) Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.

"(b) In order to carry out the objective of this chapter there shall be achieved—

(1)(A) not later than July 1, 1977, effluent limitations for point sources, other than publicly owned treatment works, (i) which shall require the application of the best practicable control technology currently available as defined by the Administrator pursuant to section 1314(b) of this title . . . ."

In order that the effluent limitations promulgated under section 1311(a) will be the same for similar point sources[1] with similar characteristics, the Administrator is directed under section 1314(b) of the Act to publish effluent limitation guidelines for various classes of pollution sources.[2] Section

---

1. A "point source" is defined under the Act as being ". . . any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C.A. § 1362(14) (Supp.1976).

2. The purpose of establishing uniform federal pollution controls for various industries with similar characteristics is to prevent states from

adopting lax pollution standards brought about through industrial threats to relocate in areas where pollution controls are less restrictive. In emphasizing that uniformity was a primary function of the effluent limitation guidelines, Senator Muskie stated that "[t]he Administrator is expected to be precise in his guidelines so as to assure that similar point sources with similar characteristics, regardless of their location or the nature of the water into which the discharge is made, will meet similar effluent limitations". *See Natural Resources Defense*

1314(b) accordingly provides:

"For the purpose of adopting or revising effluent limitations under this chapter the Administrator shall, after consultation with appropriate Federal and State agencies and other interested persons, publish within one year of October 18, 1972, regulations, providing guidelines for effluent limitations  . . . ."

Once the effluent limitations are established, the Act contemplates that they be imposed upon various point sources through the issuance of permits under a program called the National Pollutant Discharge Elimination System (NPDES) 33 U.S.C.A. § 1342 (Supp.1976). In this regard section 1342(a)(1) of the Act provides in part that "the Administrator may, after opportunity for public hearing, issue a permit for the discharge of any pollutant, or combination of pollutants, notwithstanding section 1311(a) of this title, upon condition that such discharge will meet either all applicable requirements under sections 1311, 1312, 1316, 1317, 1318, and 1343 of this title, or prior to the taking of necessary implementing actions relating to all such requirements, such conditions as the Administrator determines are necessary to carry out the provisions of this chapter."

The permits as issued accordingly would place a limit upon the amount of pollutant a particular point source would be allowed to discharge into the Nation's navigable waters. It should be noted at this point that although NPDES permits are to incorporate the requirements of effluent limitations established pursuant to various sections of the Act, section 1342(a)(1), as can be seen, clearly authorizes permits to be issued prior to the taking of necessary implementing actions under the Act.

To insure compliance with permit conditions and effluent limitations the Act provides for enforcement procedures under sec-

tion 1319. The subsection of section 1319 which is relevant to the issue involved in this lawsuit is subsection (a)(3) which reads:

"Whenever on the basis of any information available to him the Administrator finds that any person is in violation of section 1311, 1312, 1316, 1317 or 1318 of this title, or is in violation of any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by him or [his] State, he shall issue an order requiring such person to comply with such section or requirement, or he may bring a civil action in accordance with subsection (b) of this section." [3]

Turning to defendant's jurisdictional argument, the Court first notes that the undisputed facts in this case reveal that the Administrator has neither established effluent limitations under section 1311(b) nor effluent limitation guidelines under section 1314(b) which would apply to an industry such as the defendant. Instead, the Administrator has issued to defendant an NPDES permit containing conditions and limitations based upon the "best engineering judgment" of the Environmental Protection Agency. Defendant argues that in absence of previously established effluent limitations and effluent limitation guidelines implementing the listed sections of the Act, it could not be sued under the language of section 1319(a)(3) which provides that a civil action may be commenced against a violator of a "permit condition or limitation *implementing* any of [the listed] sections" (emphasis added).

A case principally relied upon by the defendant in support of its argument that it cannot be sued under section 1319 of the Act is *Natural Resources Defense Council, Inc. v. Train,* 166 U.S.App.D.C. 312, 510 F.2d 692 (1975). In that case an environmental group was seeking to compel the publication of effluent limitations by the

Council, Inc. v. Train, 166 U.S.App.D.C. 312, 510 F.2d 692 at 709–10 (1975), which discusses the Legislative History of the Federal Water Pollution Control Act.

3. Subsection (b) of section 1319 authorizes the Administrator to commence a civil action for "appropriate relief" which includes both civil money penalties and permanent or temporary injunctions. 13 U.S.C.A. § 1319(b) (Supp. 1976).

Administrator in accordance with the provisions of the Act. Upon examining the Federal Water Pollution Control Act in light of its legislative history, the Court stated:

"The Act's text and its legislative history make clear that as a general matter the section [1311(b)] guidelines and the section [1311(b)] limitations were to be developed prior to the issuance of permits. Sections [1342(a)] and [1342(b)] require that permits issued by the Administrator and by the states assure compliance with the effluent limitations of section [1311]." 510 F.2d 692 at 707–08.

The Court goes on to state, however, that "EPA correctly notes that under section [1342(a)] EPA may issue permits—upon 'such conditions as the Administrator determines are necessary to carry out the provisions of this act'—prior to taking implementing action with regard to listed sections including section [1311]." 510 F.2d at 709.

A footnote accompanying the above passage states that the Act's legislative history reveals that Congress intended that the initiation of the permit program should not be postponed until the listed sections of the Act were implemented, and that the Administrator's determination of conditions was to form the basis of permits during the "interim period" prior to promulgation of the regulations. 510 F.2d at 709, n. 92. Notably, the Administrator's duties in this regard are found under regulation 40 C.F.R. § 125.11(c), which reads in part:

"(c) In the period of time prior to the taking of necessary implementing actions relating to all applicable requirements under sections [1311, 1312, 1316, 1317, 1318, and 1343] of the Act, the Administrator may issue permits under such conditions as he determines are necessary to carry out the provisions of the Act. Any permit issued shall include any conditions and limitations necessary to insure compliance with any applicable requirements of sections [1311, 1312, 1316, 1317, 1318, and 1343] that become applicable prior to

the issuance of the permit. Foremost among other factors to be considered prior to the taking of the necessary implementing actions is the requirement for abatement measures designed to achieve, not later than July 1, 1977, best practicable (waste) control technology currently available for the particular point source (other than publicly owned treatment works) as determined by the Regional Administrator based upon information available to him and his professional judgment taking into account the intent of sections [1311, 1312, 1316, 1317, 1318, and 1343] of the Act."

Inasmuch as the Federal Water Pollution Control Act and regulations clearly provide for the issuance of NPDES permits prior to the establishment of effluent limitations which would implement the listed sections of the Act, the only question to be resolved by the Court is whether or not such a permit is enforceable under section 1319 of the Act. While the language of section 1319(a)(3) stating that civil actions may be brought against violators of a "permit condition or limitation implementing any of [the listed] sections" is rather unclear standing alone, it is the opinion of the Court that because section 1342(a) clearly authorizes NPDES permits to be issued prior to taking implementing action with regard to listed sections including section 1311, Congress must have intended that the conditions and limitations contained in those permits were to be enforced pursuant to section 1319 of the Act. Otherwise, it would be a futile gesture for the EPA to issue a permit such as is involved here.

With regard to defendant's argument that it would be unreasonable to require it to abide by a condition or limitation arrived at through the "best engineering judgment" of the EPA and not based on established effluent limitations, the Court simply notes that objections to the permit as issued by the Administrator should have been raised earlier in accordance with judicial review procedures under section 1369(b)(1) of the Act.[4]

4. Section 1369(b)(1) provides in part that:
"Review of the Administrator's action . . .
(F) in issuing or denying any permit under

section 1342 of this title, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judi-

It thus appearing to the Court that the present action is maintainable under section 1319 of the Federal Water Pollution Control Act, defendant's motion to dismiss, or alternatively for summary judgment is hereby denied.

It is so ORDERED.

APPROVED FOR ENTRY.

cial district in which such person resides or transacts such business upon application of such person. Any such application shall be made within ninety days from the date of such determination, approval, promulgation, issuance or denial . . . ."