UNITED STATES of America, Plaintiff,

v.

VELSICOL CHEMICAL CORP.,
Defendant.

No. C–75–462.

United States District Court,
W. D. Tennessee, W. D.

Motion to Dismiss Jan. 6, 1976.

Motion for Summary Judgment
Nov. 10, 1976.

W. Hickman Ewing, Jr., Asst. U. S. Atty., Memphis, Tenn., Sara S. Turnipseed, Legal Support Branch, U. S. Environmental Protection Agency, Atlanta, Ga., for plaintiff.

James W. Gentry, Jr., Gentry & Boehm, Chattanooga, Tenn., William D. Evans, Jr., Montedonico, Heiskell, Davis, Glankler, Brown & Gillilland, Memphis, Tenn., for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

McRAE, District Judge.

On November 26, 1975, defendant Velsicol Chemical Corp. filed a Motion to Dismiss in this cause on the grounds that this Court lacks jurisdiction over said cause; to wit, that the alleged discharges by defendant into the City of Memphis Wastewater Collection System is not a discharge into a "navigable water" within the statutory meaning of 33 U.S.C. § 1362(7) and that since the City of Memphis Wastewater Collection System is a nontreatment system, any alleged discharge by defendant into said system is not a discharge into a "treatment works" as proscribed by 33 U.S.C. § 1317 and therefore outside the scope of § 1317(b). Defendant also urged that the place of its discharge does not constitute a "point source" within the definition of that term at 33 U.S.C. § 1362(14) and that its alleged activities do not constitute "discharging a pollutant" as contemplated in 33 U.S.C. § 1311(a); however, defendant has presented no authority for these defenses.

■ The purpose of the Water Pollution Prevention and Control Act of 1972, 33 U.S.C. § 1251 *et seq.,* is broad and remedial. It represents a marked departure in federal water pollution control policy from a water quality standards control mechanism to a discharge control mechanism. Its objective is to restore and maintain the natural chemical, physical, and biological integrity of the nation's waters and to eliminate the discharge of pollutants into navigable waters by 1985. 2 U.S.Code Cong. & Admin.News, p. 3678 (1972). Suit has been filed against defendant as an alleged discharger of pollutants into the Mississippi River via the City of Memphis Wastewater Collection System. Defendant seeks to dismiss this suit because of its belief that, in essence, it was not intended to be covered by the Act and its activities are not subject to regulation thereunder. The Court finds these grounds for dismissal without merit.

■ First, defendant argues that since its alleged discharges are into the city sew-

er system, which, in turn, empties into the Mississippi, and not directly into the Mississippi River, that it is not discharging into a "navigable water". Congress intended to make the 1972 Act apply to its broadest limits. 2 U.S.Code Cong. & Admin.News, pp. 3742–43 (1972). The fact that defendant may discharge through conveyances owned by another party does not remove defendant's actions from the scope of this Act. Defendant knows or should have known that the city sewers lead directly into the Mississippi River and this is sufficient to satisfy the requirements of discharging into "water of the United States". 33 U.S.C. § 1311(a), § 1362(7).

■ Defendant also argues that since the City of Memphis Wastewater Collection System is a nontreatment sewer system, i. e., the system does not treat the sewage which flows through it but merely discharges it into the Mississippi, that therefore said system was not intended to be regulated by 33 U.S.C. § 1317. In addition to the extensive definition contained in § 1292(2)(A), § 1292(2)(B) states that in addition to the main definition, a "treatment works" means

> any other method or system for preventing, abating, reducting, storing, treating, separating, or disposing of municipal waste, including storm water runoff, or industrial waste . . . .

These definitions are sufficiently broad to encompass the City of Memphis Wastewater Collection System.

■ Lastly, the defendant urges that it is not "discharging a pollutant" pursuant to 33 U.S.C. § 1311(a). This is one of the ultimate questions of this lawsuit which is not ripe for disposition on a Motion to Dismiss and is therefore likewise overruled.

Therefore, it is Ordered that defendant's Motion to Dismiss is hereby denied on all grounds.

### RULING UPON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The United States initiated this action by filing a Complaint at the request of Region IV of the United States Environmental Protection Agency ("EPA" or the "Agency"). This action seeks civil penalties for defendant's continued violation of §§ 301(a) and 307(d) of the Federal Water Pollution Control Act Amendments of 1972 (hereinafter the "FWPCA" or the "Act"), 33 U.S.C. §§ 1311(a) and 1317(d). The United States alleges that defendant Velsicol Chemical Corporation violated the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit, issued pursuant to 33 U.S.C. § 1324(a), and continued operation of its facility while not complying with its interim pretreatment standards for endrin and heptachlor which were established and set forth in said permit.

On November 26, 1975, defendant filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted and for lack of jurisdiction over the subject matter. Specifically, defendant contended that its discharge is not a "discharge of pollutants" as prohibited by 33 U.S.C. § 1311(a) since the defendant discharges into the City of Memphis Wastewater Collection System (the "City System") and not directly into the Mississippi River. Defendant further alleged that its discharge into the City System is not subject to 33 U.S.C. § 1317(d) since the City System does not offer any pollution abatement treatment, and, consequently, is not a "treatment works" as contemplated by 33 U.S.C. § 1317(b).

Defendant's Motion to Dismiss was denied by an Order entered January 6, 1976. Noting that defendant's discharge through conveyances owned by another party (i. e., the City System) does not remove its actions from the scope of the FWPCA, the Court held that defendant's discharge into the Mississippi River through the City System satisfied the statutory requirements of discharging into "water of the United States". 33 U.S.C. §§ 1311(a), 1362(7). The Order also declared that the statutory definition of "treatment works," 33 U.S.C. § 1292(2)(B), is sufficiently broad to encompass the City System, which does not treat

the waste flowing through it but merely transmits it to the Mississippi River. Thus, defendant's discharge to the City System is subject to the provisions of 33 U.S.C. § 1317(b). Further, this Order acknowledged that whether defendant was "discharging a pollutant" pursuant to 33 U.S.C. § 1311(a) was an ultimate question of the lawsuit not properly subject to disposition on a Motion to Dismiss.

A Motion for Summary Judgment on the issues pertaining to liability for civil penalties was filed in behalf of the plaintiff on October 27, 1976. Memoranda were filed by counsel for both parties and an oral hearing on the Motion was held on November 4, 1976.

On the morning of November 4, 1976, and prior to the hearing on the Motion for Summary Judgment, counsel for the defendant filed a Motion for Leave to File Supplemental Answer and Counter-Claim. Prior to announcing its ruling on the Motion for Summary Judgment, the Court ruled that the defendant would be allowed to file a Supplemental Answer and Counter-Claim as proposed in the copy attached to the Motion seeking leave to file the same.

This ruling sets forth the Court's reasons for granting the Motion for Summary Judgment. The only genuine issue of material fact (i. e., whether the defendant discharges pollutants in contravention of 33 U.S.C. §§ 1311(a), 1342(a), and 1317(d)) was resolved by admission and stipulation during the deposition of Daniel R. Marks on October 4, 1976, a copy of which is on file with this Court. Mr. Marks, Plant Technical Superintendent, stated (on page 5 of his deposition) that he is responsible for the preparation of the Discharge Monitoring Reports that are submitted by defendant to EPA on a quarterly basis. In this capacity, Mr. Marks stated that the numbers on said Reports "accurately reflect the amounts of endrin and heptachlor discharged" by defendant into the City of Memphis Wastewater Collection System. The Discharge Monitoring Reports are part of the record as Exhibits attached to plaintiff's First Request for Admissions, and discharges in ex-

cess of the permit limitation of one pound of each pesticide involved in this case are noted thereon.

Section 301(a) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1311(a), imposes an absolute prohibition on the discharge from a point source of pollutants into any water of the United States by any person unless such a discharge is in compliance with Sections 301, 302, 306, 307, 318, 402, and 404.

■■■ This prohibition applies when all of the following elements are present:

1. a person
2. discharge of a pollutant to
3. navigable waters
4. through a point source
5. while not in compliance with certain other provisions of the FWPCA, e. g., NPDES permit or pretreatment standards.

Velsicol Chemical Corporation qualifies as a "person" under 33 U.S.C. § 1362(5); the pesticides endrin and heptachlor fall within the purview of "pollutants" as defined in 33 U.S.C. § 1362(6). Further, the Order of this Court entered January 6, 1976, declared the defendant's discharge into the Mississippi River a discharge into "navigable waters" pursuant to 33 U.S.C. § 1362(7) and described the City System as a "publicly-owned treatment works" as defined in 33 U.S.C. § 1292(2)(B).

Thus, the prohibition of 33 U.S.C. § 1311(a) applies to defendant's discharge into the Mississippi River through the City System, and defendant may escape liability from this statutory prohibition only by compliance with certain other sections of the FWPCA. The applicable provisions which would exclude defendant's discharge from the prohibition of 33 U.S.C. § 1311(a) are found in 33 U.S.C. § 1342(a) and § 1317(b). Pollutant discharges which comply with the conditions and limitations of a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to 33 U.S.C. § 1342(a) are so protected, as are those discharges to a publicly-owned treatment works which comply with pretreat-

ment standards as noted in 33 U.S.C. § 1342(a), as are those discharges to a publicly-owned treatment works which comply with pretreatment standards as noted in 33 U.S.C. § 1317(b). Until the promulgation of national pretreatment standards under 33 U.S.C. § 1317(b), discharges that comply with conditions determined to be necessary to carry out the requirements of 33 U.S.C. § 1317(b) and set forth in NPDES permits by the authority of 33 U.S.C. § 1342(a)(1) are also protected. Conversely, those discharges which fail to comply with an NPDES permit or the applicable pretreatment standards are specifically prohibited by 33 U.S.C. § 1311(a). In this case no national pretreatment standards had been established, therefore the violation is based upon non-compliance with the standards of the NPDES permit issued to defendant.

Defendant's NPDES permit, issued pursuant to 33 U.S.C. § 1342(a)(1) limits the amounts of the pesticide pollutants discharged by defendant into the City of Memphis Wastewater Collection System (and, thus, into the Mississippi River) to a maximum of one pound of each pollutant. Exhibit to Plaintiff's First Request for Admissions. The Discharge Monitoring Reports submitted by defendant to Region IV, United States Environmental Protection Agency, show discharges in excess of the NPDES limit on numerous days (approximately 231 days for endrin and 287 days for heptachlor).

Judicial review of the Agency's actions under certain sections of the FWPCA is limited in 33 U.S.C. § 1369(b). The authority for the issuance of permits was delegated to the Regional Administrator by Title 40, C.F.R. 125.5.

Judicial review of the Regional Administrator's action in issuing or denying a permit under 33 U.S.C. § 1342 is only available pursuant to 33 U.S.C. § 1369(b) and limited to a ninety-day statute of limitations; the only exception is for those claims based on grounds arising after the ninety-day period has expired. Further, 33 U.S.C. § 1369(b) excludes judicial review of the Administrator's (or the Regional Administrator's) actions which were subject to review under 33 U.S.C. § 1369(b) during subsequent enforcement proceedings.

In *Sun Enterprises v. Train,* 532 F.2d 280 (C.A. 2, 1976), the Court upheld the District Court in dismissing a Complaint against EPA challenging the Administrator's actions in issuing an NPDES permit since such actions are reviewable only in the Court of Appeals pursuant to Section 509(b)(1) of the FWPCA, 33 U.S.C. § 1369(b)(1). The Court also dismissed a Petition for Review of the same NPDES permit which had been filed after the District Court dismissal, on the grounds that the petition was not filed within the specified time limits of 33 U.S.C. § 1369(b). A similar construction was given by the Sixth Circuit where an action challenging the Administrator's actions concerning a state permit program was dismissed on the grounds that the Complaint was not filed within 90 days of the approval of the program. *Peabody Coal v. Train,* 518 F.2d 940 (C.A. 6, 1975).

Defendant contends that this Court lacks jurisdiction due to the failure of the Administrator to promulgate national pretreatment standards pursuant to 33 U.S.C. § 1317(b) applicable to defendant's facility. Defendant further asserts that EPA has no right to designate interim pretreatment standards for defendant's discharge.

Section 402(a)(1) of the FWPCA Amendments, 33 U.S.C. § 1342(a)(1), provides as follows:

(a)(1) Except as provided in sections 1328 and 1344 of this title, *the Administrator may,* after opportunity for public hearing, *issue a permit for the discharge of any pollutant,* or combination of pollutants, notwithstanding section 1311(a) of this title, upon condition that such discharge will meet either all applicable requirements under sections 1311, 1312, 1316, 1317, 1318, and 1343 of this title, or *prior to the taking of necessary implementing actions related to all such requirements, such conditions as the Administrator determines are necessary to*

*carry out the provisions of this Act
. . . (emphasis added).*

In addition, the Administrator is granted broad authority to "prescribe such regulations as are necessary to carry out his functions under this Act". 33 U.S.C. § 1361(a). Pursuant to the above statutory sections the Administrator acted to prescribe interim pretreatment standards for the outfall involved in this case.

The recent decision in *Natural Resources Defense Council, Inc. v. Train,* 510 F.2d 692 (D.C.Cir.1975) affirmed the Administrator's authority to implement sections of the Act prior to promulgation of regulations. In that case an environmental group sought to compel the Administrator to publish effluent limitations as required by the Act. The Court noted that the statute and its legislative history envisioned that such guidelines and limitations were to be developed prior to the issuance of permits; the Court, however, also recognized that:

> EPA correctly notes that under section [1342(a)] EPA may issue permits—upon "such conditions as the Administrator determines are necessary to carry out the provisions of this Act"—prior to taking implementing action with regard to listed sections . . . 510 F.2d at 709.

The Administrator's duties in this regard are detailed in 40 C.F.R. 125.11(c):

> (c). In the period of time prior to the taking of necessary implementing actions relating to all applicable requirements under sections [1311, 1312, 1316, 1317, 1318, and 1343] of the Act, the Administrator may issue permits under such conditions as he determines are necessary to carry out the provisions of the Act
> . . . .

National pretreatment standards for endrin and heptachlor were never issued by the Environmental Protection Agency under Section 307, 33 U.S.C. § 1317; EPA regulations simply prohibited the introduction into publicly-owned treatment works of wastes which interfere with the proper operation of the works. 40 C.F.R. 128.131.

Velsicol's NPDES permit includes limitations on the discharge from outfall 003 designated as "interim pretreatments standards". The NPDES permit was used as a vehicle for the Administrator to set standards for Velsicol's discharge on endrin and heptachlor, toxic pesticides, into the Memphis Wastewater Collection System.

■ Permits which contain those conditions and limitations determined to be necessary to carry out the objectives of the Act prior to the promulgation of national pretreatment standards pursuant to 33 U.S.C. § 1317(b) and certain other sections, are enforceable pursuant to 33 U.S.C. § 1319(b) and subject to the civil penalties provisions of 33 U.S.C. § 1319(d). A recent Order by the District Court for the Eastern District of Tennessee noted, in upholding the establishment of permit limitations, that Congress must have intended that those permits be enforced pursuant to 33 U.S.C. § 1319; "[o]therwise, it would be a futile gesture for the EPA to issue a permit such as is involved here". *United States of America v. Cutter Laboratories, Inc.,* 413 F.Supp. 1295 (E.D.Tenn.1976).

■ The defendant's admission that it discharged endrin and heptachlor into the City of Memphis Wastewater Collection System in amounts in excess of one pound of each chemical per compound per day, and the remainder of the record cause this Court to conclude that the plaintiff is entitled to a Summary Judgment that the defendant has violated 33 U.S.C. §§ 1311(a), 1342(a) and 1317(d) and therefore the defendant is liable for civil penalties as provided in 33 U.S.C. § 1319(d) after a full evidentiary hearing on the issues pertaining to the amount of civil penalties to be assessed.

Counsel for the plaintiff is directed to prepare and submit to counsel for the defendant a proposed form of Judgment consistent with the ruling set forth herein. Counsel for the defendant shall forward the proposed form of Judgment to the Court for entry as drawn or as modified.