**STUDENT PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC., et al., Plaintiffs,**

v.

**TENNECO POLYMERS, INC., Defendant.**

**Civ. No. 83–2105(AET).**

United States District Court, D. New Jersey.

Feb. 26, 1985.

Bruce J. Terris, Carolyn A. Smith, Nathalie V. Black, Terris & Sunderland, Washington, D.C., Michael Gordon, Gordon & Gordon, West Orange, N.J., Kathleen Butler, New York City, for plaintiffs.

Steven J. Picco, Greenstone & Sokol, Hackensack, N.J., for defendant.

## OPINION

ANNE E. THOMPSON, District Judge.

This matter is before the court on cross motions for summary judgment. The plaintiffs are the Student Public Interest Research Group of New Jersey, Inc. ("NJSPIRG") and the Friends of the Earth ("FOE"). The defendant is Tenneco Polymers, Inc. The suit stems from the defendant's alleged violations of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1251 *et seq*. The plaintiffs first moved for partial summary judgment on the issue of Tenneco Polymer's liability. The defendant opposed this motion and made a cross-motion for summary judgment, or in the alternative, partial summary judgment. The plaintiffs have also moved to amend their complaint to state a claim against Tenneco Resins, Inc.

### I. FACTS

In May 1974, the Administrator of the Environmental Protection Agency ("EPA"), pursuant to § 402(a) of the FWPCA, 33 U.S.C. § 1342(a), issued a National Pollutant Discharge Elimination System ("NPDES") permit number NJ 0004391 to Tenneco Polymer's predecessor in interest, Tenneco Chemicals, Inc., a manufacturer of plastics and resins in Burlington, New Jersey. The permit authorized Tenneco Chemicals to discharge limited quantities of pollutants from its facility into Marter's Ditch, a tributary of the Delaware River. In March 1981, when the regulations implementing the New Jersey Water Pollution

Control Act, N.J.S.A. 58:10A–1 *et seq.*, became effective, a New Jersey Pollutant Discharge Elimination System ("NJPDES") permit was issued to Tenneco Chemicals. This permit authorized Tenneco Chemicals to discharge pollutants in accordance with the existing NPDES permit and with the conditions stated in New Jersey's regulations.[1] The permit expired in June 1979, but remains in effect by operation of law.

Tenneco Polymers was formed on December 3, 1982. On December 15, 1982, it bought the plastics and resin manufacturing plant and subsequently had the permit transferred. On March 14, 1983, Tenneco Chemicals changed its name to Tenneco Resins.

As a condition of the permit, the holder must make a report of all monitoring results in a Discharge Monitoring Report ("DMR") at intervals specified by the permit. Tenneco Chemicals and Tenneco Polymers have been required to submit DMR's on a monthly basis. In addition, the permit requires that the EPA be notified in writing of any failure or inability to comply with any permit condition within five days of the holder's awareness of the noncompliance. These notices are usually in the form of a letter and are commonly called Noncompliance Reports ("NCR's").

The plaintiffs allege that on the basis of the DMR's and the NCR's, Tenneco Polymers has admitted a total of 197 violations of its permit, which are in turn violations of section 301(a) of the FWPCA, 33 U.S.C. § 1311(a). The plaintiffs have filed a citizens' suit under section 505 of the FWPCA, 33 U.S.C. § 1365, seeking a declaratory judgment, injunctive relief, the imposition of civil penalties and the award of costs, including attorneys' and expert witnesses' fees.

## II. DISCUSSION

### A. Defendant's Cross Motion For Summary Judgment

First, the court will consider the defendant's cross motion for summary judgment or for partial summary judgment. The defendant has put forth several arguments in support of its motion for summary judgment.

### 1. FOE As Proper Party To This Suit

Tenneco Polymers asserts that FOE has not satisfied the jurisdictional requirements of the FWPCA. Specifically, it alleges that FOE has failed to give notice of Tenneco Polymers' violations to the EPA, the State of New Jersey and to the defendant itself, as required by section 505 of the FWPCA, 33 U.S.C. § 1365. Rather, the notice of violations was forwarded by NJSPIRG and by the Atlantic States Legal Foundation. The defendant argues that a plaintiff is required to substantially comply with the notice requirement. Since FOE has not even attempted compliance, it should be dismissed from the suit.

The defendant's argument is similar to the argument put forth in *South Carolina Wildlife Federation v. Alexander*, 457 F.Supp. 118 (D.S.C.1978). In that case, the defendants argued that a citizens' suit for violations of the FWPCA should be dismissed since not all of the plaintiffs complied with the notice requirement. The court found, however, that this "argument is unconvincing because such an omission would in no way fail to put the defendants on notice as to the nature of the suit or the basis on which it was brought. Therefore, defendants have not been prejudiced by this omission ..." *Id.* at 123–24.

■ In this case, Tenneco Polymers seeks to dismiss only FOE rather than the entire suit. However, the court does not find this difference significant. The court finds that while FOE *alone* did not comply with the notice requirements, the plaintiffs *together* substantially complied. Accordingly, the motion for partial summary judgment on this basis will be denied.

### 2. The Plaintiffs' Standing

Tenneco Polymers also asserts that it should be granted summary judgment because the plaintiffs lack standing to sue.

**1.** Hereinafter the NPDES and NJDES permits will be referred to collectively as "the permit".

As already noted, the plaintiffs bring their suit pursuant to the citizen suit provision of the FWPCA, 33 U.S.C. § 1365. For the purposes of a citizen suit, a citizen is defined by the statute as "a person or persons having an interest which is or may be adversely affected" by violation of an effluent standard or limitation. 33 U.S.C. § 1365(g). According to the Supreme Court, this phrase "was intended by Congress to allow suits by all persons possessing standing under ... *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.,* 453 U.S. 1, 16, 101 S.Ct. 2615, 2624, 69 L.Ed.2d 435 (1981).

In *Sierra Club v. Morton,* the Sierra Club brought suit under the Administrative Procedures Act to enjoin the development of the Mineral King Valley in California. The Club asserted that it had standing to sue due to its concern and expertise in environmental matters. The Supreme Court acknowledged that harm to one's esthetic or recreational interests was sufficient to allege an injury in fact needed for standing to sue. However, for the purpose of standing, it was insufficient for the Sierra Club to allege merely an interest in the proposed development. Rather, the Club had to allege "that it or its members would be affected in any of their activities or pastimers by the ... development." 405 U.S. at 735, 92 S.Ct. at 1366.

In the instant case, Tenneco Polymers acknowledges that in their answers to interrogatories, the plaintiffs have set forth names of individual members and the ways in which they are adversely affected by the condition of the Delaware River near the Tenneco Polymers plant. The plaintiffs' members complain that the pollution of the Delaware harms the esthetic beauty of the area which they, personally, would otherwise enjoy, and that it inhibits their actual use of the river for recreation.

However, the defendant argues that the injuries set forth by the plaintiffs are insufficient to give them standing to sue. It asserts that while the plaintiffs have set forth that they are injured by the general pollution of the Delaware River, they have not shown that these injuries are caused specifically by the alleged violations of Tenneco Polymers. Thus, the defendant argues that the plaintiffs have not shown that they have been injured in fact from the defendant's actions.

The court finds this argument to be unpersuasive. Obviously, the pollution of a portion of a major, interstate waterway such as the Delaware River, is caused by the combination of discharges from many different sources. The effect of the defendant's argument would be to prohibit any citizens' suits against violators of the FWPCA unless the violation was so great or the waterway so small that the direct impact of the discharges could be pinpointed. This interpretation of the FWPCA would be directly contrary to its intent. It was enacted in 1972 after "[e]nforcement of predecessor statutes, which had relied on water quality standards as the primary method of pollution control, had been largely unsuccessful. It was too difficult to establish the necessary correlation between effluent discharges by particular sources and the quality of the body of water into which the effluent flowed. To solve the dilemma the Act, while retaining water quality standards, predicated pollution control on the application of control technology on the plants themselves rather than on the measurement of water quality. [Footnote omitted]." *Hooker Chemicals & Plastics Corp. v. Train,* 537 F.2d 620, 623 (2d Cir. 1976).

Thus, the court rejects the defendant's theory of standing as overly burdening the plaintiffs. The court finds that the plaintiffs have adequately documented injuries to its members as required by *Sierra Club v. Morton* and have accordingly satisfied the requirement for standing to sue. Tenneco Polymers' motion to dismiss on this basis will be denied.

### 3. EPA's Enforcement As A Bar To This Action

The defendant also moves for summary judgment on the basis that "it has actively

cooperated with appropriate regulatory agencies in attempting to resolve all apparent causes of potential violations or problems." The defendant argues that citizen suits are only appropriate after administrative remedies fail. In this case, the EPA issued an Administrative Order on February 15, 1980, asking Tenneco Chemicals to explain the basis for the violations, and the defendant has been working cooperatively with both the EPA and the New Jersey Department of Environmental Protection to correct discharge problems.

■ The court finds that the EPA administrative action does not affect the plaintiffs' right to bring this citizen suit. According to section 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B), no citizen suit may be commenced "if the Administration or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or ... a State ..." Under certain circumstances, agency action may be considered the equivalent of court action. *Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215 (3d Cir.1979). Thus, the Third Circuit found that an agency could be considered a court which would bar a citizen suit under the Clean Water Act when it has the "power to accord relief which is the substantial equivalent to that available to the EPA in federal courts ..." *Id.* at 219. The court also indicated that the right of citizens to intervene in the action may be a factor in finding that the agency action was not equivalent to a court. *Id.*

In this case, the court finds that the EPA proceedings lacked the power to accord the substantial equivalent to the relief available in federal court since the EPA has no authority to impose civil penalties. Moreover, citizens had no opportunity to participate in the EPA's administrative enforcement proceeding. In making this determination that the EPA action was not a court proceeding which would bar the citizen suit, this court is in accord with *Student Public Interest Research Group of New Jersey, Inc. v. Fritzsche, Dodge & Olcott, Inc.*, 579 F.Supp. 1528 (D.N.J.1984) (hereinafter *"NJSPIRG v. FDO"*); *Student Pub-*

*lic Interest Research Group of New Jersey v. Monsanto Co.*, 14 E.L.R. 20228 (D.N.J. 1983) (hereinafter *"NJSPIRG v. Monsanto"*); and *Sierra Club v. SCM Corp.*, 572 F.Supp. 828 (W.D.N.Y.1983), *dismissed on other grounds*, 580 F.Supp. 862 (W.D.N.Y. 1984).

### 4. Statute of Limitations

■ Tenneco Polymers also seeks partial summary judgment on the basis of the statute of limitations. The defendant argues that since the FWPCA does not include a statute of limitations for the initiation of citizen suits, the court should "borrow" the most analogous state statute of limitations. The defendant asserts that since the plaintiffs are seeking civil penalties payable to the government, the most analogous New Jersey statute of limitations is N.J.S.A. 2A:14–10(a), which provides a two-year statute of limitations for all actions "... brought for any forfeiture upon any penal statute ... when the forfeiture is or shall be limited by the statute to the State of New Jersey only ..." The court finds, however, that in the context of the FWPCA, it could not have been the intent of Congress to have the federal courts borrow state statutes of limitation and certainly not statutes as short as two years for the bringing of citizens suits. If courts were to borrow state statutes of limitations then the enforcement of the FWPCA through citizen suits would differ from state to state. Some states could choose to have a very brief statute of limitations and thus be very hospitable to industries that violate the Act. Clearly, the FWPCA was meant to combat this diversity in state enforcement and put forth a national policy for halting the pollution of the nation's waters. *See* 33 U.S.C. § 1251 (Congressional declaration of goals and policy); § 1253 (interstate cooperation and uniform laws); *American Frozen Food Institute v. Train*, 539 F.2d 107, 129 (D.C.Cir. 1976).

In addition, the court is not persuaded that Congress envisioned a statute of limitations for citizen suits as short as two

years. First, this short limitations period would truncate the right of citizen plaintiffs to seek penalties for past violations. The right to seek civil penalties for past violations has recently been affirmed by federal district courts in *Sierra Club v. Aluminum Co. of America,* 585 F.Supp. 842, 20 E.R.C. 1916 (N.D.N.Y.1984); *Student Public Interest Research Group v. Ragen Precision Industries,* Civ. No. 83–1604 (D.N.J. Dec. 19, 1983); and *NJSPIRG v. Monsanto, supra.* Second, as stressed by the defendant, enforcement of the FWPCA through citizen suits is appropriate only after the EPA and the state have had an opportunity to enforce the Act. Thus, it would defeat the purpose of the Act to impose a shorter statute of limitations on citizen suits than on federal or state agencies.[2]

The defendant argues in the alternative that if the court does not borrow the state statute of limitations, the five-year federal statute of limitations found in 28 U.S.C. § 2462 should be applied.[3] There is no precedent for applying this statute to citizen suits of this type. Moreover, even if this is the statute of limitations that would apply to EPA enforcement, the court would hesitate to apply the same limitations period to citizen plaintiffs, who, as already discussed, cannot bring suit until after the state and federal agencies have had an adequate opportunity to enforce the Act. For all of the above reasons, Tenneco Polymers' motion for partial summary judgment on the basis of the statute of limitations will be denied.

### 5. Dismissal Of Complaint In Regard To Violations Before December 15, 1982

Tenneco Polymers also moves for summary judgment on alleged violations which

occurred before December 15, 1982,[4] the date when Tenneco Polymers bought the Burlington plant from Tenneco Resins. The plaintiffs argue that Tenneco Polymers can be held responsible for the violations of Tenneco Chemicals since there was a substantial continuity of identity between the two corporations. The plaintiffs assert that the change was, in essence, only a change in name. According to the plaintiffs, both corporations are subsidiaries of Tenneco, Inc., and the change followed an internal reorganization of the corporation. The plaintiffs note that the same plant manager continued after Tenneco Polymers took over and the plant appears to operate in the same way since the change in ownership. The defendant denies that there is continuity of identity between the corporations to the extent that Tenneco Polymers could be held liable for Tenneco Chemicals' violations. The defendant notes that there was more than merely a cosmetic change in name since Tenneco Chemicals continues to exist under the name Tenneco Resins.

The court finds that there are clearly unresolved questions of law and fact as to whether Tenneco Polymers could be held liable for alleged violations that occurred when the plant was owned by Tenneco Chemicals. Accordingly, the defendant's motion for summary judgment on this issue will be denied at this time.

### B. Plaintiffs' Motion for Summary Judgment

The court now moves to the plaintiffs' motion for partial summary judgment on the issue of liability. In this motion the plaintiffs seek only a declaratory judgment that Tenneco Polymers has violated sections 301 and 402 of the FWPCA, 33 U.S.C.

---

**2.** The court notes without deciding that the defendant argues that the statute of limitations for the EPA to bring suit is five years.

**3.** 28 U.S.C. § 2462 states:
Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be

entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

**4.** It appears that 190 of the 197 alleged violations occurred before December 15, 1982.

§§ 1311 and 1342. If this motion is granted, the plaintiffs will request a hearing to set forth the scope of the injunctive relief, civil penalties and costs that are also being sought.

■ Enforcement of NPDES permits is based on strict liability. *United States v. Earth Sciences, Inc.*, 599 F.2d 368, 374 (10th Cir.1979). However, the defendant asserts that the plaintiffs' motion for summary judgment should be denied because there remains a question of fact as to whether Tenneco Polymers violated the permit. Tenneco Polymers argues that 55 of the alleged violations are within the margin of analytic error. Moreover, the defendant states that there is a question of fact whether the information contained in the DMR's and NCR's can conclusively show permit violations since the testing procedures, in general, are inaccurate.

This same argument was raised and rejected in *NJSPIRG v. FDO*, 579 F.Supp. at 1538. In *FDO*, the court noted that the defendant's "speculations [that the information contained in the DMR's and NCR's is inaccurate] were unaccompanied by any direct evidence of reporting inaccuracies." *Id.* Tenneco Polymers argues that its claims of inaccuracies differ from those asserted in *FDO* since it has submitted affidavits from Fred W. Kanzler, the environmental coordinator from Tenneco Polymers' Burlington plant, and from John Cirello, Vice President of Princeton Aqua Science. Kanzler states in his affidavit in part that: "Based upon information I have received from EPA regarding their quality assurance program for testing laboratories, and my own experience with analytical testing procedures, it is my understanding that there are inherent margins of error in the results of the laboratory tests in the BOD, COD, TSS Ph and TOC categories." In his affidavit, Cirello states in part: "... it is my professional opinion that it cannot conclusively be stated (and, in fact, it is highly questionable) that the amount of discharge which is alleged to be represented by the sample test, was in fact the amount actually discharged into the Delaware River by this defendant."

■ This court finds, however, that these affidavits are insufficient to raise a question of fact to defeat the plaintiffs' motion for summary judgment. There is no indication that the EPA would not consider the information contained in Tenneco Polymers' DMR's and NCR's as conclusively showing permit violations. Moreover, the affidavits do not raise a question of fact that there were errors in the actual tests performed which showed permit violations. This court is in agreement with the other courts in this district that "reports or records which are required to be kept by law, such as DMR's and NCR's, may be used to establish a defendant's liability." *FDO, supra,* at 1538, relying on *NJSPIRG v. Monsanto,* 14 E.L.R. at 20230–31. As noted by the court in *FDO:*

> This result is consistent with the legislative history of the Act, which emphasizes the benefits of expedition in enforcing the Act:
>
>> [T]he bill ... establishes and makes precise new requirements imposed on persons and subject to enforcement. One purpose of these requirements is to avoid the necessity of lengthy fact finding investigations at the time of enforcement. Enforcement of violations of requirements under this Act should be based on relatively narrow fact situations requiring a minimum of discretionary decision making or delay.
>
> S.Rep. No. 414, 92nd Cong., 1st Sess. 64, *reprinted in* 1972 U.S.Code Cong. & Ad. News 3668, 3730. [Footnote omitted].

*FDO, supra* at 1538–39. Consequently, summary judgment will be granted to the plaintiffs on the issue of Tenneco Polymers' liability. However, since the defendant has raised a question of fact as to whether it can be held liable for violations which occurred when the plant was owned by Tenneco Chemicals, summary judgment will be granted only for violations which occurred after December 15, 1982.

## C. Plaintiffs' Motion To Amend The Complaint

The plaintiffs have also moved to amend their complaint to name Tenneco Resins (formerly Tenneco Chemicals) as a defendant. The court will grant the motion to amend the complaint pursuant to Fed.R. Civ.P. 21. However, the court notes that it has rendered an opinion today concerning the liability of Tenneco Polymers only. After Tenneco Resins has been served in accordance with the Federal Rules of Civil Procedure, the plaintiffs may make any appropriate motions.

## D. Defendant's Motion To Exceed Page Limitation

Finally, the defendant has moved to exceed the page limitation in its reply brief. This motion will be granted.

## III. CONCLUSION

In conclusion, for the reasons stated in this opinion, the defendant's motion for summary judgment or partial summary judgment is denied. The plaintiffs' motion for summary judgment on the issue of liability is granted for violations which occurred after December 15, 1982. The plaintiffs' motion to amend the complaint and the defendant's motion to exceed the page limitation in its reply brief are granted.