**STUDENT PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, INC., et al., Plaintiffs,**

v.

**JERSEY CENTRAL POWER & LIGHT COMPANY, et al., Defendants.**

Civ. No. 83–2840.

United States District Court, D. New Jersey.

April 9, 1986.

Bruce J. Terris, Carolyn A. Smith, Terris & Sunderland, Washington, D.C., for plaintiffs.

Robert O. Brokaw, Morristown, N.J., Scott M. DuBoff, Bishop, Liberman, Cook, Purcell & Reynolds, Washington, D.C., for defendants Jersey Cent. Power & Light Co. and GPU Nuclear Corp.

BISSELL, District Judge.

The case at bar arises out of a complaint filed by Student Public Interest Research Group of New Jersey (SPIRG) and Friends of the Earth (FOE) on July 29, 1983, alleging that defendants Jersey Central Power & Light Company (JCPL) and General Public Utilities Nuclear Corporation (GPU) have violated the terms and conditions of their National Pollution Discharge Elimination System/New Jersey Pollution Discharge Elimination System (NPDES/NJPDES) permits, No. NJ 000 5550, in violation of Section 301(a) of the Federal Water Pollution Control Act, ("the Act" or FWPCA), as amended, 33 U.S.C. § 1311. Plaintiffs seek a declaratory judgment, injunctive relief, civil penalties and cost/attorneys fees.

Plaintiffs presently move for partial summary judgment, seeking a declaratory judgment that defendants have violated Sections 301 and 402 of the Act. Plaintiffs assert that the present motion does not cover the other remedies for defendants' violation of the statute. If summary judgment on the issue of defendants' liability is granted, plaintiffs will request a hearing relating to the appropriate relief.

Defendants presently move to dismiss the complaint, asserting that plaintiffs have no standing, that there is no case or controversy, that genuine issues of fact preclude summary judgment, that the ac-

tion is barred in light of the fact that the alleged violations occurred more than two years before the filing of the suit, and that a citizen cannot sue under FWPCA Section 505 for the imposition of penalties for past violations of the FWPCA.

## FACTS

Defendant JCPL is an electric utility serving approximately 2 million persons in over 13 counties in the State of New Jersey. JCPL owns the Oyster Creek Nuclear Generating Station ("Oyster Creek" or OCNGS), located in Lacey Township, Ocean City, New Jersey. "Pursuant to a contract with Jersey Central, defendant GPU Nuclear Corporation (GPU Nuclear)—a sister corporation of Jersey Central—operates Oyster Creek Station." (D.Br. at 2) Oyster Creek is a 640 megawatt nuclear power plant which began operating in 1969, and serves over 600,000 New Jersey consumers.

Oyster Creek draws water from the nearby South Branch of the Forked River, and its operation requires a substantial supply of water. This water, after use by OCNGS, is discharged into Oyster Creek, which is adjacent to OCNGS. Both Forked River and Ocean Creek flow into Barnegat Bay.

On December 22, 1974, the Administrator of the Environmental Protection Agency (EPA), pursuant to § 402(a) of the FWPCA, 33 U.S.C. § 1342(a), issued a NPDES permit No. NJ 000 5550, to defendants, effective January 31, 1975. The permit authorizes JCPL to discharge limited quantities of pollutants from the OCNGS into Oyster Creek and subsequently into Barnegat Bay.

The permit was to take effect on January 31, but after the permit was issued, JCPL requested an adjudicatory hearing to contest various conditiions/limitations under the permit. After a stipulation was entered, modifying various terms and conditions, JCPL withdrew its request for a hearing.

On March 6, 1981, the New Jersey Department of Environmental Protection (NJDEP) issued a NJPDES permit to defendant. (The permit limitations are summarized in Plaintiffs' Br. at pp. 13–14.)

On January 1, 1982, while still maintaining ownership of the facility, JCPL transferred control and operation of the OCNGS to defendant GPU.

The NPDES/NJPDES permits require that defendants submit monthly "Discharge Monitoring Reports" (DMR's), which defendants have been doing since 1977. In the event of a failure to comply with permit requirements, permit holders must notify EPA and NJDEP in writing within five days of becoming aware of the non-compliance. These are called Non-compliance Reports, (NCR's).

Plaintiffs presently move for partial summary judgment asserting that defendants' DMR's and NCR's demonstrate 257 violations of their permits. Plaintiffs contend that defendants have recognized the seriousness of their non-compliance, as evidenced by their filing on May 11, 1981 of an interoffice memo, stating that "non-compliance with our NPDES permit at Oyster Creek is a serious problem. ... [B]oth EPA and DEP have threatened JCPL with enforcement action if the current trend continues." Plaintiffs demonstrate 74 more violations of their permit subsequent to the date of this memorandum.

Plaintiffs submit that the present matter clearly is ripe for partial summary judgment since there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

"The courts have long approved the use of the reports or records which are required by law to be kept as admissions in establishing civil liability." (Plaintiff's Br. at 17, citing *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1947), *reh'g denied*, 335 U.S. 836, 69 S.Ct. 9, 93 L.Ed. 388 (1948)). Plaintiffs assert that the Supreme Court has applied this rule to reports required by the FWPCA. The Supreme Court held in *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), *reh'g denied*, 448 U.S.

916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980), that defendants' report of an oil spill into navigable waters filed pursuant to § 311(b)(5), 33 U.S.C. § 1321(b)(5), could be used to establish defendants' liability for civil penalties under § 311(b)(6) of the Act.

Plaintiffs contend that *Ward* can be applied to the facts of the instant case to demonstrate defendants' violation of the terms and conditions of its permit. Moreover, plaintiffs assert that the law is clear that a discharger whose effluent exceeds its permit limitations has violated the Act.

Section 301(a) of the Act, 33 U.S.C. § 1311(a), makes unlawful any discharges which are not consistent with other specified sections of the statute, including § 402, 33 U.S.C. § 1342.

Defendants JCPL and GPU presently oppose plaintiffs' motion for partial summary judgment by moving to dismiss plaintiffs' complaint. Defendants contend that dismissal is warranted on three grounds: (1) that this Court lacks subject matter jurisdiction because Section 505 does not authorize penalty suits for past violations; (2) the action is barred by the New Jersey Statute of Limitations; (3) plaintiffs lack standing to sue. For the reasons which follow, this Court shall grant plaintiffs' motion for partial summary judgment and deny defendants' motion to dismiss.

In preparation of this Opinion, and reaching the result herein, the Court has considered numerous decisions in comparable cases arising in this district. These decisions include the published opinions of Judge Stern in *S.P.I.R.G. v. Fritzsche, Dodge & Alcott, Inc.*, 579 F.Supp. 1528 (D.N.J.1984), aff'd, 759 F.2d 1131 (3d Cir. 1985), and *S.P.I.R.G. v. A.T. & T. Bell Laboratories*, 617 F.Supp. 1190 (D.N.J. 1985), and Judge Thompson in *S.P.I.R.G. v. Tenneco Polymers, Inc.*, 602 F.Supp. 1394 (D.N.J.1985). In the present Opinion the Court has endeavored to enunciate rulings consistent with those decisions as well as its own opinions in such cases as *S.P.I.R.G. v. Anchor Thread Co.*, 22 ERC 1150 (D.N. J.1984); *S.P.I.R.G. v. National Starch & Chemical Corp.*, (Civ. No. 84–1119—Octo-

ber 15, 1985) and *S.P.I.R.G. v. American Cyanamid Co.*, (Civ. No. 83–2068—November 6, 1985).

Defendants argue that plaintiffs lack the requisite standing to maintain the present action. Defendants contend that plaintiffs must demonstrate (1) a distinct and palpable injury to their members, (2) that can fairly be traced to defendants, and (3) that is likely to be redressed by a favorable decision. (Defendants' Br. at 27, citing *Valley Forge Christian College v. Americans United*, 454 U.S. 464, 472–75, 102 S.Ct. 752, 758–60, 70 L.Ed.2d 700 (1982)).

Plaintiffs have submitted 13 affidavits of their members "who are adversely affected by the quality of water in Barnegat Bay, which receives defendants' discharges via Oyster Creek." (Plaintiffs' Br. at 22; footnote omitted). The affidavits are submitted by residents of the Bay area and members who recreate on Barnegat Bay. They assert that they have observed an increase in the pollution in the Bay area. The affiants state that they plan to continue recreational activities in the Bay.

While plaintiffs have demonstrated a "distinct and palpable injury to their members," defendants argue that the injuries set forth by plaintiffs are insufficient to confer standing to sue. (Defendants' Br. at 32). This Court does not agree. Defendants' interpretation would prohibit citizen suits against FWPCA violators unless the violations were of such a magnitude that they were overwhelmingly attributable to the violator, or where the waterway was small enough so that the source of the pollutant could be pinpointed.

This reasoning is clearly contrary to the intent of the Act. The FWPCA was enacted in 1972 after "[e]nforcement of predecessor statutes, which had relied on water quality standards as the primary method of pollution control, had been largely unsuccessful. It was too difficult to establish the necessary correlation between effluent discharges by particular sources and the quality of the body of water into which the effluent flowed. To solve the dilemma the Act, while retaining water quality stan-

dards, predicated pollution control on the application of control technology on the plants themselves rather than on the measurement of water quality." *Hooker Chemicals & Plastics Corp. v. Train,* 537 F.2d 620, 623 (2d Cir.1976) (footnote omitted).

■ This Court rejects defendants' position on standing. Such a standard would be overburdensome on plaintiffs. As in *S.P.I.R.G. v. Monsanto Co.,* 600 F.Supp. 1479, 1484 (D.N.J.1985), "these members are being and will be adversely affected by the discharges with regard to their 'health, economic, recreational, aesthetic and environmental interests.'" Like the *Monsanto* Court, this Court finds that such allegations are sufficient to confer standing. Plaintiffs have adequately documented injuries to their members and accordingly have satisfied the requirements for standing to sue.

Defendants assert that dismissal of the present action is also required because "a section 505 suit's fundamental purpose is to *abate* violations of the Act that are *ongoing.*" (Defendants' Br. at 18). Defendants contend that the specific "present tense" language of the statute permits suit only "against a person who is alleged *to be in violation* of an effluent standard or limitation." *Id.* According to defendants, Congress did not intend that citizen suits be brought to collect penalties for past violations.

■ Defendants' arguments are not persuasive. As plaintiffs assert, defendants' DMR's demonstrate defendants' continuing violations for the months of November 1983 and January through March 1984. Even assuming arguendo that the violations were not of a continuing nature, this Court agrees with plaintiffs that civil penalties may be granted for past violations.

Section 505(a) provides that:

[t]he district courts shall have jurisdiction ... to enforce ... an effluent standard or limitation, ... *and* to apply appropriate civil penalties under section 309(d) of this Act [33 U.S.C. § 1319].

33 U.S.C. § 1365(a) (emphasis added). Clearly, both prospective injunctive relief and civil penalties are authorized in citizen suits for statutory violations.

Plaintiffs correctly point out that under JCPL's interpretation of the statute, it would be impossible for citizens to satisfy the 60–day notice requirements for a suit for civil penalties. 33 U.S.C. § 1365(b). If a citizen were to send "notice of the alleged violation" after a violation had occurred and at least 60 days prior to bringing suit, defendant could always assert that civil penalties could not be imposed for such past violations. Congress clearly did not intend such an interpretation.

The recent caselaw in this district also rejects defendants' position. An identical issue was presented to Judge Lacey in *S.P.I.R.G. v. Ragen Precision Industries,* (Civil No. 83–1604, December 19, 1983) and he stated, "I think that the Federal Water Pollution Control Act provides for citizen suits based solely on past violations." (Transcript of proceedings, p. 7, Plaintiff's Exh. E). While defendants rely on a contrary ruling in the United States District Court for the District of Rhode Island, the Courts in this district have consistently held that civil penalties are available to redress past violations. *See, e.g., S.P.I.R.G. v. A.T. & T. Bell Laboratories, supra,* 617 F.Supp. at 1199.

■ Defendants argue alternatively that if past violations can support a claim for penalties, the two-year Statute of Limitations for enforcement of penalties under New Jersey law (N.J.S.A. 2A:14–10(a)) should be employed in partial bar of plaintiffs' claims. While it is true that the Federal Water Pollution Control Act contains no Statute of Limitations, and that under general principles one would "borrow" a state limitation governing any analogous course of action, that argument is unpersuasive in the present matter. Section 505 contemplates that a citizen plaintiff here assumes the role of a private attorney general, stepping in "if the Administrator or State has [not] commenced and is [not] diligently prosecuting a civil or

criminal action ..." In the present case, the United States would not be affected by any Statute of Limitations (whether federal—such as 28 U.S.C. § 2462; or state). In order that congressional policy be fully implemented, such a restriction should not limit the effectiveness of a citizen attorney general's suit either. Several courts within the district have held that no state Statute of Limitations applies to citizen suits brought under the FWPCA. *See S.P.I.R.G. v. A.T. & T. Bell Laboratories, supra,* 617 F.Supp. at 1202; *S.P.I.R.G. v. Monsanto Co.,* 600 F.Supp. 1474, 1477 (D.N.J.1985); *S.P.I.R.G. v. Tenneco Polymers, Inc., supra,* 602 F.Supp. at 1398–99.

■ Defendants argue vigorously that both the conditions of their permit and the EPA's "upset" regulation raise genuine issues of material fact as to whether permit violations upon which plaintiffs base this action are excused. Defendants assert that the vast majority (if not all) of the reflected violations are the result of either the unanticipated demand upon the Sewage Treatment Plant (STP) at Oyster Creek or the unanticipated corrosion problem with certain intake screens which affected intake velocity of water at the plant. The provision of the permit which defendants invoke is Condition 15(3) thereof which reads as follows:

> It is recognized that influent quality changes, equipment malfunction, acts of God or other circumstances beyond the control of the permittee may sometimes result in effluent concentrations exceeding the permit limitations despite the exercise of appropriate care and maintenance measures, and corrective measures by the permittee. The permittee may come forward to demonstrate to the EPA that such circumstances exist in any case where effluent concentrations exceed those set forth in this permit. The EPA, however, is not bound to wait for, or solicit, such demonstrations prior to the initiation of any enforcement proceeding, nor must it accept as valid on its face the statements made in any such demonstration. Nevertheless, if the EPA seeks to

enforce in any administrative or judicial proceeding any provision of any permit issued to the permittee by any permitting agency, the permittee may raise at that time the issue of whether, under the United States Constitution, statute, or decisional law, it is entitled to a defense that its conduct was caused by circumstances beyond its control.

Assuming, for the purpose of the present argument only, that the present plaintiffs would be subject to the same defenses to which EPA agreed in this condition, such defenses are limited to those where "under the United States Constitution, statute, or decisional law, it is entitled to a defense that its conduct was caused by circumstances beyond its control." This Court agrees with plaintiffs' argument that the only persuasive source of such law appears in the EPA "upset" regulation. Under 40 C.F.R. § 122.41(n), an "upset" is defined as:

> [A]n exceptional incident in which there is unintentional and temporary noncompliance with technology based permit effluent limitations because of factors beyond the reasonable control of the permittee. An upset does not include noncompliance to the extent caused by operational error, improperly designed treatment facilities, inadequate treatment facilities, lack of preventive maintenance, or careless or improper operation.

This Court determines that there is no genuine issue of material fact and that plaintiffs have established that there is nothing "temporary" about defendants' noncompliance with the "effluent limitations" of its permit. See the continuity and numerosity of the violations appended to this Court's Order for Summary Judgment entered today. Furthermore, defendants' own argument demonstrates that the two major failures of its facility fall squarely within the provisions of the final sentence of the above regulation which sets forth what "[a]n upset does not include." Accordingly, no "upset" excuses or exclusions are available to the defendants to defeat

the plaintiffs' summary judgment motion, either in whole or in part.

This Court determines that plaintiffs have standing to bring the present action; that they may sue for defendants' past violations of the Act; that the Statute of Limitations does not bar the present action, and that no genuine issues of material fact exist as to whether or not the defendants' permit violations are excusable. Accordingly, defendants' motion to dismiss shall be denied.

Plaintiffs have successfully demonstrated that defendants' 257 violations of their NPDES/NJPDES permit are in violation of § 301 of the FWPCA, 33 U.S.C. § 1311. Accordingly, this Court shall grant plaintiffs' motion for partial summary judgment.