**FRIENDS OF THE EARTH, and Atlantic States Legal Foundation, Inc., Plaintiffs,**

v.

**FACET ENTERPRISES, INC., Defendant.**

**No. CIV–84–357T.**

United States District Court, W.D. New York.

Dec. 28, 1984.

Bruce J. Terris, Lee Ann Meyer, Terris & Sunderland, Washington, D.C., Richard J. Lippes, Allen, Lippes & Shonn, Buffalo, N.Y., for plaintiffs.

Theodore L. Garrett, Covington & Burling, Washington, D.C., Ragna Henrichs, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for defendant.

## DECISION and ORDER

TELESCA, District Judge.

This is a citizen's suit to enforce the anti-pollution standards of the Federal Clean Water Act, 33 U.S.C. Section 1251, *et seq.* Plaintiffs are environmental organizations, and defendant operates an automotive parts manufacturing plant in Elmira Heights, New York. Jurisdiction of this Court is alleged pursuant to Section 505 of the Clean Water Act, 33 U.S.C. Section 1365. Pending before me are plaintiffs' motion for partial summary judgment as to liability, and defendant's motion for summary judgment as to standing, the applicable statute of limitations, and failure to state a claim under Clean Water Act Section 505. As set forth below, I determine that the applicable statute of limitations is five (5) years under 28 U.S.C. Section 2462, and deny the remaining motions for summary judgment.

## FACTS

In operating its Elmira facility, defendant Facet Enterprises discharges treated waste into Mays Creek, a tributary of Newtown Creek, which is in turn a tributary of the Chemung River. A permit authorizing the discharge of limited amounts of pollutants was issued to the defendant initially by the Environmental Protection Agency (a National Pollutant Discharge Elimination System, or NPDES, permit) and subsequently by the New York State Department of Environmental Conservation, or DEC (a State Pollutant Discharge Elimination System, or SPDES, permit). Plaintiffs allege over 100 violations of these permits between 1977 and 1982, based upon Discharge Monitoring Reports (DMR's) filed by defendant with DEC. Plaintiffs also allege some eleven (11) violations of the SPDES permit since that time, all of which defendant alleges not to have been prohibited by the terms of the SPDES permit and the applicable regulations.

In June, 1984, defendant moved to dismiss plaintiffs' complaint for failure to state a claim, primarily upon the theory that the Clean Water Act does not grant citizen plaintiffs a right to sue for civil penalties imposed soley as a result of *past* violations. This motion has been converted to a summary judgment motion, and some discovery has taken place on this and other issues. Defendant has added two (2) more counts to its summary judgment motion, dealing with standing and the applicable statute of limitations. Defendant claims that plaintiffs lack standing because they have no interest adversely affected by defendant's discharges, and because plaintiffs have suffered no injury traceable to defendant's discharges. Further, defendant argues that the applicable statute of limitations is either the five (5) year statute of limitations under 28 U.S.C. Section 2462, or alternatively the three (3) year statute of limitations under New York CPLR Section 214.

Plaintiffs' motion for partial summary judgment is based upon the DMR's filed by defendant which provide evidence of violations. Plaintiffs claim that the DMR's conclusively establish defendant's liability for the violations.

## DISCUSSION

### I. Standing

Plaintiffs have provided several affidavits (many of which are as yet unsigned) from members attesting to their aesthetic and recreational use of the Chemung River. Plaintiffs claim that this establishes an interest adversely affected by discharges from defendant's plant, satisfying the first prong of the two-prong test of standing under *Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Plaintiffs claim that the second prong of the test, (that there be injury to plaintiffs traceable to the defendant's violations), has been satisfied insofar as plaintiffs are required to do so under the holding in *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), by a showing that plaintiffs' members use the area affected by defendant's discharges recreationally and aesthetically.

■ The test for standing in a case such as this one was recently articulated by the Second Circuit in *Sierra Club v. S.C.M. Corporation*, 747 F.2d 99 (1984):

The constitutional limits on standing are grounded in the requirement of Article III that the federal courts adjudicate only actual cases or controversies, and such limitations require that the would-be plaintiff show injury in fact, *i.e.*, "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Prudential concerns may further limit the class of those permitted to sue, as where "the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated," and thus requires that the plaintiff's injury be "peculiar to himself or to a distinct group of which he is a part, rather than one 'shared in substantially equal measure by all or a large class of citizens.'" Finally, Congress may grant a right to sue to those who meet the constitutional limitations on standing but who might otherwise be barred by prudential limitations. Congress may not, however, "abrogate the Art. III minima: A plaintiff must always have suffered 'a distinct and palpable injury to himself,' ... that is likely to be redressed if the requested relief is granted."

At 103 (citations omitted).

After analyzing the legislative history of Clean Water Act Section 505, the Second Circuit did not state categorically that Congress intended by Section 505 to abrogate any prudential limitations on standing. Rather, the court held only that "[Section] 505(g)'s definition of 'citizen' as a 'person or persons having an interest which is or may be adversely affected,' means those who can claim injury in fact within the meaning of [*Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) ]." At 105. The implication of this

holding for an environmental group is that for the group to have standing it must show individualized injury in fact to its members. *Id.* at 107.

■ I find that plaintiffs herein have met this test. The signed affidavits from their members demonstrate that the members derive recreational and aesthetic benefits from the area affected by defendant's discharges. Under the holding in *United States v. SCRAP, supra,* no greater showing is required in order to establish standing. I caution plaintiffs, however, that proof of standing is not ultimate proof of either violations by defendant or injury to plaintiffs.

## II. Past vs. Present Violations

Defendant argues that Clean Water Act Section 505(a)(1) requires that it be currently "in violation" of the Act before plaintiffs can maintain this action. Although the bulk of the violations alleged by the plaintiffs occurred prior to 1982, plaintiffs have alleged some eleven (11) "current" violations. Defendant has submitted affidavits arguing that, for various reasons, the eleven (11) incidents did not constitute violations of the SPDES permit or the applicable regulations. Plaintiffs have responded with arguments (by persons who do not appear to possess the scientific qualifications of defendant's senior plant engineer) that the defendant's "justifications" for the incidents are more apparent than real.

■ Consequently, defendant argues that, despite discovery, plaintiffs have failed to set forth, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Rather, plaintiffs

in their memoranda have disputed the interpretations of the alleged post-1982 violations given by defendant's senior plant engineer. For purposes of this motion, the evidence must be viewed in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A party may rely upon documentary evidence in the record in opposing a summary judgment motion. 6 Pt. 2 Moore's Federal Practice Para. 56.23 (1982). Plaintiffs have relied upon the proof of violations contained in defendant's DMRs. While I do not believe the DMRs supply conclusive proof of defendant's liability, see Part IV, *supra,* I believe they enable plaintiffs to survive defendant's motion for summary judgment as to the issue of whether current violations exist. However, I caution plaintiffs that they will be expected to produce competent expert testimony at trial if they are to meet their burden to prove that these eleven (11) incidents actually constitute violations.[1]

## III. Statute of Limitations

Defendants argue that the five (5) year statute of limitations under 28 U.S.C. Section 2462 is the applicable statute of limitations, and thus that any violations alleged to have occurred more than five (5) years prior to the filing of plaintiffs' notice of their intent to sue are time-barred. Alternatively, defendant claims that the three (3) year statute of limitations of New York C.P.L.R. Section 214 applies.

Plaintiffs respond that there is no statute of limitations governing EPA's enforcement of the Clean Water Act, and that

---

1. Parenthetically, I find it difficult to accept the logic of defendant's argument that plaintiffs' action for civil penalties is not maintainable if based solely upon past violations. As plaintiff has pointed out, it is difficult for a plaintiff to verify that a violation is occurring at the very time that plaintiff is filing notice of intent to sue. Surely if a plaintiff can bring a citizen suit seeking civil penalties (a proposition with which defendant does not seem to quarrel), a plaintiff could base a citizen suit upon violations (particularly intermittent ones) which had occurred in the very recent past, as this would provide some

indication of ongoing conduct by a defendant. This being so, I am not prepared to draw a line which Congress has not drawn, defining the point at which violations are deemed sufficiently "recent" to form the basis for a citizen suit. To my mind, that line has been drawn already at five (5) years, in 28 U.S.C. Section 2462, as set forth below.

Nevertheless, if a defendant could show that violations had not occurred immediately prior to (and subsequent to) the institution of a civil suit, this would certainly be a relevant factor in the fixing of any civil penalty.

there should be no limitation on the rights of citizens to act as "private attorneys general" in bringing citizen suits under Section 505. Alternatively, plaintiffs' claim that if a statute of limitations does apply, it is the five (5) year statute of limitations under 28 U.S.C. Section 2462, rather than a period of time provided under a state statute of limitations.

The language of 28 U.S.C. Section 2462, is clear and provides that:

Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five (5) years from the date when the claim first accrued if, within the same period, the offender of the property is found within the United States in order that proper service may be made thereon.

 Plaintiffs have conceded that they cannot recover damages under Section 505, but can only require defendant to pay penalties for past violations and/or be enjoined against future violations. Accordingly, because this is an action for federal statutory civil penalties, I hold that the five (5) year statute of limitations of 28 U.S.C. Section 2462 applies.[2]

### IV. DMR's as Proof of Liability

Plaintiffs also argue that the DMRs filed by defendant constitute conclusive proof that defendant has committed the violations reported in the DMRs, entitling plaintiffs to partial summary judgment as to defendant's liability for the violations. Plaintiffs rely primarily on four recent District Court cases from New Jersey for support, *Student Public Interest Research Group of New Jersey v. Monsanto Co.*, 14 ELR 20228 (D.N.J.1983); *Student Public Interest Research Group of New Jersey v. Fritzsche, Dodge & Olcott*, 579 F.Supp. 1528 (D.N.J.1984); *Student Public Interest Research Group of New Jersey v. Tenneco*

*Polymers, Inc.*, 602 F.Supp. 1394 (D.N.J. 1984); and, *Student Public Interest Research Group of New Jersey v. Anchor Thread Co.*, Civ. No. 84–0320 (D.N.J. Oct. 1, 1984). As defendant points out, however, in those cases the defendants either offered no evidence contradicting their own DMRs or argued unconvincingly that the DMRs could not be relied upon due to inaccuracies or measuring error. In the present case, defendant has offered a multitude of justifications for the alleged violations, along with convincing arguments why many of the alleged violations should not actually constitute violations (e.g., typographical mistakes in the DMRs). I will not exclude defendant's evidence, and I decline to grant plaintiffs' motion for partial summary judgment.

I would draw the parties attention before trial to the provisions of Fed.R.Civ.P. 16(c)(3) and Section VI.B.1 of the 1984 Guidelines for Practice and Procedure Before this Court. In this case (which plaintiffs allege to involve over 150 violations by defendant) I would expect the parties to stipulate to the facts on as many of the alleged violations as possible.

ALL OF THE ABOVE IS SO ORDERED.

---

**2.** Defendant argues in a footnote that, if this Court does not apply the federal statute of limitations, it should borrow the applicable state three-year statute of limitations in New York CPLR Section 214 (McKinney 1983). Because I

am ruling that the five-year federal statute of limitations applies, I do not address defendant's argument, nor plaintiffs' strenuous response to it.