CONNECTICUT FUND FOR THE ENVI-
RONMENT; Natural Resources
Defense Council

v.

The JOB PLATING COMPANY, INC.

Civ. No. H–83–963(JAC).

United States District Court,
D. Connecticut.

Sept. 17, 1985.

Katherine H. Robinson, Hartford, Conn., for plaintiff Connecticut Fund for the Environment.

James Thornton, New York City, for plaintiff Natural Resources Defense Council.

Sharon Holland Purtill, Law Offices of Peter Jay Alter, Glastonbury, Conn., for defendant Job Plating Co., Inc.

## RULING ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This is a citizen suit under the federal Clean Water Act against the operator of an electroplating plant that concededly discharges pollutants into the Quinnipiac River. The suit was brought against the Job Plating Company of Plainville, Connecticut, by the Connecticut Fund for the Environment and the Natural Resources Defense Council.

The environmental organizations contend that Job Plating violated the Clean Water Act on 174 occasions by discharging ef-

fluents in excess of the amount permitted by its National Pollutant Discharge Elimination System permit. The plaintiffs seek a declaratory judgment that Job Plating has violated the Clean Water Act, an injunction to prevent further violations, and civil penalties of up to $10,000 per violation payable to the United States Treasury. They also seek costs and attorneys' fees.

Job Plating does not deny that it has exceeded the discharge levels authorized by its NPDES permit. However, the company asserts that this action should nonetheless be dismissed for any of five reasons. The court finds none of these arguments to be persuasive.

First, Job Plating contends that the suit was not brought within the applicable statute of limitations. The court finds, however, that the action is governed by the five-year statute of limitations applicable to government suits under the Clean Water Act rather than by the shorter statute of limitations that would be provided by state law. Accordingly, the action is timely.

Second, Job Plating asserts that penalties for past violations cannot be recovered in citizen suits under the Clean Water Act. The court finds that, while private damages may not be recoverable under the Act, civil penalties (including fines) may be obtained on behalf of the United States.

Third, Job Plating argues that the court, in an exercise of its discretion, should defer in this matter to the Connecticut Department of Environmental Protection. However, the court finds that no such deference is called for where, as here, the suit does not raise complex issues of fact that are peculiarly within the agency's expertise.

Fourth, Job Plating contends that the action should be dismissed because, under the Clean Water Act, a citizen suit is precluded by a state's "diligent prosecution" of the same matter. The court finds that

there was no "diligent prosecution" in this case, however, because the state's suit against Job Plating was initiated only after the citizen suit.

Finally, Job Plating argues that its NPDES permit is unenforceable because it was not properly promulgated. The court, noting that Job Plating failed to take advantage of earlier opportunities to challenge its permit, holds that the validity of the permit cannot be raised in this action.

Accordingly, the court finds that Job Plating is liable to the plaintiffs for violation of the Clean Water Act. The court defers a decision with respect to the relief that ought to be granted as a result of this ruling.

### I.

This action, a citizen suit brought pursuant to Section 505 of the Clean Water Act ("Act"), 33 U.S.C. § 1365, was commenced on November 17, 1983.[1] The plaintiffs are environmental organizations some of whose members meet the standing requirements established for citizen suits pursuant to Article III of the United States Constitution and 33 U.S.C. § 1365. *See* Endorsement Ruling (entered Mar. 28, 1985) on Defendant's Motion for Judgment on the Pleadings (filed Dec. 28, 1984); Certified Official Transcript of Oral Ruling delivered at a Hearing Held on November 19, 1984 (filed Nov. 26, 1984) (discussion of standing requirements in the context of this case); *Sierra Club v. SCM Corporation*, 747 F.2d 99, 103–07 (2d Cir.1984) (standard for standing for citizen suits brought under 33 U.S.C. § 1365); *Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57, 60 (2d Cir.1985) (recent case applying *Sierra Club v. SCM Corporation* standard for standing and upholding standing in conditions similar to this case). The defendant

---

**1.** This case originally was assigned to the docket of Judge M. Joseph Blumenfeld, Senior United States District Judge. With the consent of Judge Blumenfeld and other transferor judges, and pursuant to an Order of Transfer and Reassignment (entered Aug. 2, 1984 by Chief Judge T.F. Gilroy Daly) this case and other similar pending cases brought by the plaintiffs in this District were transferred to my docket. Nineteen such cases are now pending, not including several in which consent decrees have been entered. This case is one of three in which summary judgment motions have been fully briefed and argued.

is a Connecticut corporation that operates an electroplating plant in Plainville, Connecticut, and concededly dicharges effluents into the Quinnipiac River.

The plaintiffs allege that the defendant violated its National Pollutant Discharge Elimination System ("NPDES") permit, *see* 33 U.S.C. § 1342(a), (b) (authorizing state issuance of NPDES permits pursuant to approval of the state's program by the Administrator of the federal Environmental Protection Agency ["EPA"]).[2] Specifically, the plaintiffs contend, based on the Discharge Monitoring Reports ("DMRs") that the defendant is required to file by law, that the defendant exceeded the permissible discharge allowed under its NDPES permit on 174 occasions. *See* 33 U.S.C. § 1318; 40 C.F.R. § 122.41(j); Plaintiffs' Statement Pursuant to [Local] Rule 9[c] in Support òf Their Motion for Summary Judgment ("Plaintiffs' Statement"), ¶ 4, Exhibit D *attached to* Notice of Motion (filed Mar. 2, 1984). The plaintiffs seek declaratory relief with respect to the defendant's alleged past violations of its NPDES permit, injunctive relief preventing future violations, civil penalties of up to $10,000 per violation payable to the United States pursuant to 33 U.S.C. §§ 1319(d), 1365(a), and costs and attorney's fees pursuant to 33 U.S.C. § 1365(d).

On March 2, 1984, the plaintiffs filed a motion for partial summary judgment accompanied by a statement of undisputed facts, exhibits, an affidavit and a memorandum of law. On May 11, 1984, the defendant filed a memorandum in opposition to plaintiffs' motion. The defendant filed a motion to dismiss accompanied by exhibits, an affidavit and a memorandum of law. Each of the parties thereafter filed several additional papers concerning the outstanding motions. On November 19, 1984 (after the transfer of this case to me), oral argument was held on the pending motions. The motion for partial summary judgment and motion to dismiss became ripe for deci-

sion as of March 28, 1985, the date on which the plaintiffs' standing was upheld.

## II.

The following material facts are undisputed:

1. On February 23, 1976, the Connecticut Department of Environmental Protection (DEP) issued NPDES permit number CT0022284 to the defendant. The permit was reissued on March 23, 1978. *See* Plaintiffs' Statement, ¶ 3 and Exhibit A (NPDES permits).

2. The defendant is required by its NDPES permit to file monthly DMRs. These reports indicate whether the defendant, on the basis of the results of specific tests, is in compliance with its permit. *See* Plaintiffs' Statement, ¶ 4; Exhibit D *attached to* Plaintiffs' Statement (copies of DMRs).

3. The defendant reported in its DMRs that, between May 1978 and November 17, 1983, it had on 174 occasions discharged substances in excess of the amounts allowed by its permit. *See* Plaintiffs' Statement, ¶ 5.

4. On September 9, 1983, the plaintiffs sent a Notice of Intent to Sue to the Administrator of EPA, DEP and the defendant pursuant to 33 U.S.C. § 1365(b)(1)(A). *See* Affidavit of Alfred J. Mastriani (executed May 8, 1984) ("Mastriani Aff."), ¶ 7, Ex. B.

5. Neither the EPA nor the DEP had filed any action against the defendant as of November 17, 1983, the date this action was filed. *See* Mastriani Aff., ¶¶ 8–10.

6. On December 9, 1983, the Commissioner of DEP issued an Order to Abate Pollution, No. 3639 to the defendant. Mastriani Aff. ¶ 9, Ex. C.

7. On February 9, 1984, Mike Harder, Senior Sanitary Engineer for the Water Compliance Unit, DEP, sent a letter to the defendant that stated that the defendant was in violation of DEP's Abatement Order

---

**2.** The EPA Administrator has issued the necessary approval to the DEP to issue NPDES permits. *See* Plaintiffs' Statement Pursuant to [Lo-cal] Rule 9[c] in Support of Their Motion for Summary Judgment ¶ 3, *attached to* Notice of Motion (filed Mar. 2, 1984).

and that the matter had been referred to the Attorney General's Office for further action. *See* Mastriani Aff. ¶ 10, Ex. D.

8. The plaintiffs have never contacted the defendant and requested that they be permitted to join in negotiations with the DEP and the defendant, nor have they been denied the opportunity to so join in. *See* Mastriani Aff., ¶ 11.

9. On March 19, 1984 the State of Connecticut, through DEP, instituted a civil action in the Connecticut Superior Court against the defendant to enforce Abatement Order No. 3639. *See* Mastriani Aff., Ex. E (copy of complaint). The defendant was served with the Summons and Complaint on March 23, 1984, and counsel filed an appearance on April 3, 1984 on behalf of the defendant. On April 6, 1984, the plaintiffs' counsel was informed by the defendant's attorney of the suit by DEP. *See* Mastriani Aff., ¶ 13.

10. The state's suit in the Connecticut Superior Court seeks enforcement of Order No. 3639, issued on December 9, 1983, requiring submission of an engineering report and subsequent placement of approved waste water treatment facilities in operation by May 31, 1984; the instant citizen suit seeks penalties for violation of effluent limitations set forth in NPDES Permit No. CT0022284, and an injunction against future violations of the permit limits. *See* Affidavit of Richard F. Webb (executed June 19, 1985) ("Webb Aff."), ¶ 2(c).

11. The state's suit has been resolved, with no penalties assessed against the defendant and the filing of a Stipulated Judgment in the Superior Court on June 6, 1984. *See* Webb Aff., ¶ 2(c), Attachment (Stipulated Judgment).

## III.

The defendant raises five arguments in favor of its motion to dismiss and in opposition to the plaintiffs' motion for summary judgment: (1) that this action is barred by the applicable statute of limitations; (2) that 33 U.S.C. § 1365 precludes retrospective relief in citizen suits; (3) that the DEP has primary jurisdiction over this lawsuit;

(4) that the court does not have jurisdiction over this lawsuit because the state has diligently prosecuted an action against the defendant within the meaning of Section 1365(b)(1)(B), which makes the lack of such prosecution a prerequisite for a citizen suit; and (5) that the defendant's NPDES permit is invalid because it was not properly promulgated and therefore cannot be enforced against the defendant. If the defendant fails to prevail on at least one of these arguments, partial summary judgment on the issue of liability must enter in favor of the plaintiffs. *See* Section IV, *infra*. Each of these arguments shall be addressed *seriatim*.

### A. Statute of Limitations

The Act provides no statute of limitations for actions brought under it. The defendant argues that state law should supply the applicable statute of limitations for state-promulgated NPDES permits. *See* Memorandum of Law in Support of Motion to Dismiss (filed May 11, 1984) ("Defendant's Memorandum I") at 21–23; Defendant[ ] Job Plating Company, Inc. Supplemental Memorandum of Law in Support of Motion to Dismiss (filed Sept. 19, 1984) ("Defendant's Memorandum III") at 1–3. In this case, the defendant contends that the applicable statute of limitations is one year pursuant to Conn.Gen.Stat. § 52-585 (civil penalty actions), or three years under the statute governing nuisance actions. *See* Defendant's Memorandum I at 22–23; Defendant's Memorandum III at 3. The defendant maintains that the federal five-year statute of limitations applicable to civil penalty actions, 28 U.S.C. § 2462, does not apply to citizen suits under the Act because that statute covers only actions brought on behalf of the United States; Section 1365(a) refers to "citizen actions" as brought on the "[citizen's] behalf[.]" Defendant's Memorandum I at 21–22; Defendant's Memorandum III at 1–2.

The plaintiffs, citing cases on point, claim either that the five-year limitations period of 28 U.S.C. § 2462 uniformly should apply to citizen (and government) suits under the

Act or that no statute of limitations is applicable to citizen suits. *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss and Response to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (filed June 21, 1984) ("Plaintiffs' Memorandum II") at 11–13; Plaintiffs' Supplemental Memorandum on Statutes of Limitations (filed Oct. 12, 1984) ("Plaintiffs' Memorandum III") at 1–6; Memorandum of Law and Index of Cases (filed June 19, 1985) ("Plaintiffs' Memorandum IV") at 2.

Our Court of Appeals recently has held that

> [w]hen Congress creates a federal cause of action but does not expressly provide an applicable statute of limitations, [it is to be] assume[d] that Congress intended the courts to adopt the limitation period of an analogous cause of action ... and "resort to state law remains the norm for borrowing of limitations periods." ... *But where the application of a state statute of limitations would "frustrate or interfere with the implementation of national policies" or "be inconsistent with the underlying policies of the federal statute," courts should borrow a timeliness rule from federal law.*

*Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, International Brotherhood of Teamsters,* 762 F.2d 228, 230 (2d Cir.1985) ("*Soft Drink Workers*") (emphasis supplied) (citations omitted).

The defendant has not drawn to the court's attention any case in which a court has applied a state statute of limitations to a citizen suit under the Act. In contrast, several courts specifically have refused to apply state limitations periods because to do so would frustrate the federal policy of uniform enforcement of the Act. *See Chesapeake Bay Foundation v. Bethlehem Steel Corporation,* 608 F.Supp. 440, 446–50 (D.Md.1985) ("*Chesapeake Bay I*"); *Student Public Interest Research Group of New Jersey, Inc. ("NJSPIRG") v. Tenneco Polymers,* 602 F.Supp. 1394, 1398–99 (D.N.J.1985) ("*NJSPIRG I*");

*NJSPIRG v. Monsanto Co.,* 600 F.Supp. 1474, 1477 (D.N.J.1985) ("*NJSPIRG II*"); *Sierra Club v. Simkins Industries, Inc.,* 617 F.Supp. 1120, 1124–25 (D.Md.1985).

The court concludes that application of the state statute of limitations to citizen suits under the Act is inappropriate, precisely for the reason noted by the Court of Appeals in *Soft Drink Workers. See Chesapeake Bay I, supra,* 608 F.Supp. at 446–50 (noting that application of a state statute of limitations to citizen suits would be inconsistent with the five-year statute of limitations available for similar suits seeking identical relief initiated by the federal government pursuant to the Act); *NJSPIRG I, supra* 602 F.Supp. at 1398–99 (same).

Three of the cases that have dealt with the appropriate statute of limitations for citizen suits under the Act, including one in this Circuit, have applied the five-year limitations period of 28 U.S.C. § 2462. *See Friends of the Earth v. Facet Enterprises, Inc.,* 618 F.Supp. 532, 22 Env't Rep.Cas. (BNA) 1143, 1145–46 (W.D.N.Y.1984) ("*Friends of the Earth*") (defendant argued for five-year limitations period under federal law or, in the alternative, a three-year period under state law; plaintiff argued for no statute of limitations); *Chesapeake Bay I, supra,* 608 F.Supp. at 449–50; *Sierra Club v. Simkins Industries, Inc., supra,* at 1124–25. Two others, *NJSPIRG I* and *NJSPIRG II,* found both state statutes of limitations and Section 2462 to be inapplicable and concluded that there is no statute of limitations for actions brought pursuant to the Act.

This court assumes without deciding that 28 U.S.C. § 2462 is not directly applicable to citizen suits brought under the Act. *See Bertha Building Corp. v. National Theatres Corp.,* 269 F.2d 785, 788–89 (2d Cir.1959) (Section 2462 applies only to actions brought on behalf of the United States and *qui tam* actions), *cert. denied,* 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960); *but cf. Friends of the Earth, supra,* 618 F.Supp. 532, 22 Env't Rep.Cas. (BNA) at 1145–46 (holding Section 2462

to be directly applicable to citizen suits under the Act).[3] However, a citizen suit brought under the Act is closely analogous to an action brought under the same Act on behalf of the United States. *See Chesapeake Bay I, supra,* 608 F.Supp. at 449–50; *Soft Drink Workers, supra,* 762 F.2d at 230–32. Accordingly, the five-year statute of limitations period of Section 2462 ought to be applied in citizen suits brought pursuant to Section 1365.

## B. *Penalties for Past Violations*

The defendant contends that 33 U.S.C. § 1365(a) only permits prospective relief in citizen suits and, therefore, no remedy is available for past violations of an NPDES permit. Defendant's Memorandum I at 20–21. To support its position that only prospective (injunctive) relief for ongoing violations is appropriate,[4] the defendant points to the language of Section 1365(a) that authorizes citizen suits against "any person ... who *is* alleged to be in violation [of an NPDES permit,]" *id.* (emphasis added), and invokes cases holding that *damages* are not available in citizen actions under Section 1365. *See Middlesex County Sewerage Authority v. National Sea Clammers,* 453 U.S. 1, 14, 17–18, 101 S.Ct. 2615, 2623, 2624–25, 69 L.Ed.2d 435

(1981); *City of Evansville, Indiana v. Kentucky Liquid Recycling,* 604 F.2d 1008, 1014 (7th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980). The plaintiffs, on the other hand, contend that, although damages may not be recoverable in citizen suits brought under Section 1365, liability and remedies (including fines) may be imposed on the defendant for past violations of NPDES permits. Plaintiffs' Memorandum II at 13–14; Plaintiffs' Memorandum IV at 5–7.

Every court but two that has considered this issue has ruled in favor of the plaintiffs' position for the reason that Section 1365 explicitly authorizes district courts "to apply any appropriate civil penalties under [33 U.S.C.] section 1319(d)" and because the remedies obtainable in citizen suits should be coextensive with those available in suits initiated by the federal government. *See Sierra Club v. Aluminum Company of America,* 585 F.Supp. 842, 853–54 (N.D.N.Y.1984) (Miner, J.); *NJSPIRG II, supra,* 600 F.Supp. 1476–77; *Sierra Club v. C.G. Manufacturing, Inc.,* Civ. No. 84–1784–Z (D.Mass. Apr. 12, 1985) (Zobel, J.) at 3–6; *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.,* 611 F.Supp. 1542 (E.D.Va.1985) (Merhige, J.) ("*Chesapeake Bay II*") at

**3.** *Bertha Building Corp. v. National Theatres Corp.,* 269 F.2d 785 (2d Cir.1959), *cert. denied,* 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542 (1960) is distinguishable because it interpreted Section 2462 (in *dicta*) in an era preceding the advent of citizen suits. A citizen suit is analogous to a *qui tam* action (to which Section 2462 is applicable) but in some ways is closer to a suit on behalf of the government, in contrast with the private action that was considered in *Bertha Building Corp. v. National Theatres Corp.* For example, whereas the penalties in a purely private action or a *qui tam* action inure in whole or in part to a prevailing plaintiff, the penalties in a citizen suit under Section 1365 inure exclusively to the United States Treasury. *See Chesapeake Bay I, supra,* 608 F.Supp. at 449–50. In other words, our Court of Appeals, if faced with the question today, probably would include citizen suits within the ambit of Section 2462. In any case, as noted herein, the prevailing standard permits the application of analogous federal statutes of limitations in circumstances where there is no explicit federal limitation and application of a state limitations period is inappro-

priate. This issue is not discussed in *Bertha Building Corp. v. National Theatres Corp., supra.*

**4.** The defendant goes on to claim that injunctive relief is inappropriate because the plaintiffs have failed to allege current violations by the defendant of its NPDES permit, and therefore that the plaintiffs are entitled to no relief. *See* Defendant's Memorandum I at 21. Assuming *arguendo* that the defendant's view of relief obtainable pursuant to Section 1365(a) were correct, the plaintiffs sufficiently have alleged ongoing violations by the defendant of its NPDES permit. *See* Affidavit of James Thornton (executed Mar. 1, 1984), ¶ 11 *attached to* Notice of Motion (filed Mar. 2, 1984); Complaint (filed Nov. 17, 1983), ¶ 17. Such violations may well be considered at a later stage of these proceedings. In any event, prospective relief for the effects of past violations is available pursuant to Section 1365. *See Illinois v. Outboard Marine Corporation, Inc.,* 680 F.2d 473, 478–81 (7th Cir.1982) (Wisdom, J., sitting by designation) (remedies available for violations of expired permit in suit under Section 1365).

1544–46; *NJSPIRG v. Anchor Thread Company*, 22 Env't Rep.Cas. (BNA) 1150, 1154 (D.N.J.1984) ("*NJSPIRG III*"); *Sierra Club v. Raytheon Company*, 22 Env't Rep.Cas. (BNA) 1050, 1053–55 (D.Mass. 1984). *See also Friends of the Earth, supra*, 618 F.Supp. 532, 22 Env't Rep.Cas. (BNA) at 1146; *NJSPIRG v. Fritzsche, Dodge & Olcott, Inc.*, 759 F.2d 1131, 1138 (3d Cir.1985) ("*NJSPIRG IV*"); *NJSPIRG I, supra*, 602 F.Supp. at 1399. *Accord, Illinois v. Outboard Marine, Inc.*, 680 F.2d 473, 480–81 (7th Cir.1982) (Wisdom, J., sitting by designation).

The cases relied upon by the defendant only state the undisputed proposition that private damages are not recoverable by plaintiffs in citizen suits brought under Section 1365; in fact, those very cases refer to the availability of civil penalties for past violations in such suits. *See Middlesex County Sewerage Authority v. National Sea Clammers Association, supra*, 453 U.S. at 14, n. 25, 17–18, n. 27, 101 S.Ct. at 2623, n. 25, 2625, n. 27; *City of Evansville, Indiana v. Kentucky Liquid Recycling, supra*, 604 F.2d at 1014, n. 16. *See also NJSPIRG II, supra*, 600 F.Supp. at 1474 (noting distinction of cases cited by defendant); *Chesapeake Bay II, supra*, at 1551–53 (same); *Sierra Club v. C.G. Manufacturing, Inc., supra*, at 3–6 (same).

Two cases contrary to the plaintiffs' position, *Hamker v. Diamond Shamrock Chemical Co.*, 756 F.2d 392, 395–99 (5th Cir.1985) (*dicta* in case involving one-time discharge not subject to any permit); *Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp.*, 21 Env't Rep.Cas. (BNA) 1393 (D.R.I.1984), are inapposite and unpersuasive. *See Chesapeake Bay II, supra*, at 1550–52 (criticizing and distinguishing *Hamker v. Diamond Shamrock Chemical Co.* and *Pawtuxet Cove Marina, Inc. v. Ciba-Geigy Corp.*); *Sierra Club v. Simkins Industries, Inc., supra* at 1131–32 (distinguishing *Hamker v. Diamond Shamrock Chemical Co.* on its facts).

■ Accordingly, the court finds that the plaintiffs in this action may obtain relief for the defendant's past violations of its NPDES permit.

### C. *Primary Jurisdiction*

The defendant contends that the doctrine of primary jurisdiction should cause the court, in an exercise of its discretion, to defer to DEP's abatement proceeding. *See* Defendant's Memorandum I at 17–19. The plaintiffs, on the other hand, argue that the doctrine of primary jurisdiction has no application to this case because of the absence of complex issues of fact with which the court is unfamiliar and with respect to which the agency arguably is expert. *See Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952); *Skoller v. Blue Cross-Blue Shield of Greater New York*, 584 F.Supp. 288, 290 (S.D.N.Y.1984) (Lasker, J.).

■ Assuming *arguendo* that the doctrine of primary jurisdiction may be applied to require a deference of some kind to state administrative agencies in matters treated by federal law, the factors that would lead the court to invoke that doctrine are not present in this case. The court is not faced with complex issues of fact, but rather with a straightforward enforcement action in which legal issues are presented. In fact, the drafters of Section 1365 unequivocally asserted that "[e]nforcement of pollution regulations is not a technical matter beyond the competence of the courts." Senate Comm. on Public Works, Federal Water Pollution Control Act Amendments of 1972, S.Rep. No. 92–414, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 3668, 3747 (1972). *See Board of Education of the City School District of the City of New York v. Harris*, 622 F.2d 599, 606–07 (2d Cir.1979) ("It is well established that the courts need not defer to an agency where the issue involved is a strictly legal one, involving neither the agency's particular expertise nor its fact finding prowess."), *cert. denied sub nom., Hufstedler v. Board of Education of the City School District of the City of New York*,

449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981).

A case relied upon by the defendant, *Montgomery Environmental Coalition Citizens Coordinating Committee on Friendship Heights v. Washington Suburban Sanitary Commission*, 607 F.2d 378, 381–82 (D.C.Cir.1979), is clearly distinguishable on its facts. In that case, the relevant NPDES permit had yet to be promulgated by the administrative agency, and administrative proceedings were pending on technical issues concerning the permit. In contrast, in this case, the NPDES permit already has been issued by DEP and the plaintiffs seek only its enforcement in this action. To the extent that any proceedings before DEP are relevant to this case, they involve the issue of diligent prosecution discussed in Section III.D., *infra*.

The court concludes that the doctrine of primary jurisdiction does not prevent it from exercising jurisdiction over this action to enforce an NPDES permit.

### D. *Diligent Prosecution*

The defendant contends that the state, by bringing an abatement action against it in state court, was "diligently prosecuting" an action within the meaning of 33 U.S.C. § 1365(b)(1)(B),[5] and such purported diligent prosecution precludes a citizen suit pursuant to Section 1365(a). *See* Section 1365(b)(1)(B); Defendant's Memorandum I at 9–17. The plaintiffs maintain that a state proceeding brought several months after the commencement of this action and since concluded does not constitute "diligent prosecution" that would bar this action. Furthermore, the plaintiffs maintain that the state's action differed from this suit in important respects and that the state suit was intended to supplement, not preclude, this action. *See* Plaintiffs' Memorandum II at 3–5; Webb Aff.; Plaintiffs' Memorandum IV at 3–5.

On its face, the diligent prosecution provision of Section 1365(b)(1)(B) does not apply to a case in which the state did not take any enforcement action until *after* the citizen suit was filed.[6] The language of Section 1365(b)(1)(B) (captioned "Notice"), to the effect that "[n]o action *may be commenced ... if the ... State has commenced*" an action, clearly contemplates action *prior* to the filing of a citizen suit. Only where there has been such prior action is it possible to consider whether that action is "diligent prosecution" that would preclude the filing of the citizen suit. *See Sierra Club v. Simkins Industries, Inc., supra,* at 1125 (state administrative action initiated *after* the filing of a citizen suit does not fall within the ambit of Section 1365(b)(1)(B) ). *See also Friends of the Earth v. Consolidated Rail Corp., supra,* slip op. at 62–63 (Section 1365(b)(1)(B)'s language should be strictly construed).

Apart from *Sierra Club v. Simkins Industries, Inc., supra,* in which the state agency acted after the citizen suit had been filed in federal court, all the cases that have considered Section 1365(b)(1)(B)'s diligent prosecution provision (and the analogous provision of the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B) ) deal with enforcement actions that commenced (and usually culminated) *prior* to the institution of the citizen suit. *See Hudson River Sloop Clearwater, Inc. v. Consolidated Rail Corporation,* 591 F.Supp. 345, 346–53

---

**5.** 33 U.S.C. § 1365(b)(1)(B) provides in pertinent part:

No action may be *commenced* —
(1) under subsection (a)(1) of this section—
\* \* \* \* \* \*
(B) if the Administrator [of EPA] or State *has commenced* and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right. [emphasis supplied]

**6.** 33 U.S.C. § 1365(b)(1)(A) requires that potential citizen plaintiffs provide notice to EPA, the state, and the potential defendant of the alleged violations sixty days prior to commencing an action pursuant to Section 1365(a). This notice provision is intended to give EPA and the state a chance to institute action that might preclude the need for a citizen suit. In this case, there is no dispute that proper notice was given and that the state took no action until *after* the plaintiffs commenced their suit. *See* Section I, ¶¶ 4–9, *supra*.

(N.D.N.Y.1984), *rev'd sub. nom, Friends of the Earth v. Consolidated Rail Corp.*, *supra* (state administrative action is not "diligent prosecution" under Section 1365(b)(1)(B) ); *Sierra Club v. SCM Corporation*, 572 F.Supp. 828, 829–31 (W.D.N.Y.1983); *Love v. New York State Department of Environmental Conservation*, 529 F.Supp. 832, 843–44 (S.D.N.Y.1981); *Gardeski v. Colonial Sand & Stone Company, Inc.*, 501 F.Supp. 1159, 1161–68 (S.D.N.Y.1980); *NJSPIRG IV, supra*, 759 F.2d at 1132–39; *Baughman v. Bradford Coal Co.*, 592 F.2d 215, 216–19 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

■ The court concludes that, in accordance with the unambiguous language of Section 1365(b)(1)(B), actions taken by the state after the filing of a citizen suit may not be considered as constituting "diligent prosecution" pursuant to that section.[7]

### E. *Validity of NPDES Permits Issued by DEP*

The defendant's final argument goes to the very validity and enforceability of the NPDES permits issued by DEP. Specifically, the defendant contends that because certain "guidelines" that DEP used to set the effluent standards in the NPDES permit allegedly were not properly promulgated under the Uniform Administrative Procedure Act, Conn.Gen.Stat. §§ 4–177—4–182, the standards are not enforceable in this action. *See* Memorandum of Law in

Support of Defendant's Motion in Opposition to Plaintiffs' Motion for Summary Judgment (filed May 11, 1984) ("Defendant's Memorandum II") at 5–12. The plaintiffs counter that an attack on the defendant's NPDES permit is inappropriate in this proceeding and that, in any case, the provisions of the NPDES permit are valid and enforceable. *See* Plaintiffs' Memorandum III at 5–11.

The defendant has failed to avail itself of two different fora in which it might have challenged its NPDES permit. First, the defendant did not commence an administrative challenge to the NPDES permit within 30 days of its issuance by DEP, as permitted by statute. *See* Conn.Gen.Stat. §§ 22a–430, 22a–436; *Water Resources Commissioner v. Connecticut Sand and Stone Corporation*, 170 Conn. 27, 31–32, 364 A.2d 208 (1975) (failure to pursue a timely administrative challenge to DEP order under predecessor statute precluded a subsequent challenge); *Costle v. Meadow Haven, Inc.*, 32 Conn.Supp. 121, 342 A.2d 373, 373–74 (Conn.Super.1975) (same).

■ By failing to challenge its NPDES permit under state law at a time when its purported legal deficiency should have been as apparent to the defendant as it is now, the defendant is precluded from doing so in this action.[8]

Second, the defendant could have filed an application for review (in the United States Court of Appeals), challenging EPA's ap-

---

**7.** Assuming *arguendo* that, contrary to the clear wording of Section 1365(b)(1)(B), the commencement of an action by the state in state court after the commencement of a citizen suit may under some circumstances come within the ambit of Section 1365(b)(1)(B), the action commenced by the state against the defendant probably does not constitute "diligent prosecution" that would preclude the plaintiffs' action. The plaintiffs contend that the state action cannot constitute such "diligent prosecution" because of basic differences in scope and objectives between that suit and their own. *See* Plaintiffs' Memorandum II at 3–5; Webb Aff. They assert that the state action was intended to supplement, not to preclude, their action and that "the state's action referred only to the scheduling order, and its resolution does not require compliance with the permit in the future or impose penalties for its past violation." *Id.* at 4. *Cf.*

*Brewer v. City of Bristol*, 577 F.Supp. 519, 525–26 (E.D.Tenn.1983) (citizen suit should not be dismissed on ground of "diligent" state prosecution where state's suit may not adequately protect rights of parties).

**8.** The defendant claims that the state statutory provisions do not comport with due process in a case such as this, where the defendant allegedly did not encounter problems with its NPDES permit until more than 30 days after DEP issued the permit. Assuming *arguendo* that the defendant did not have constructive notice that, given its levels of effluent discharge, the NPDES permit might be questionable, there is no indication in the record that it ever attempted to initiate any formal action concerning the validity of the permit with DEP or in the state courts. *See Sun Enterprises, Ltd. v. Train*, 532 F.2d 280, 290–92 (2d Cir.1976) (dismissal of challenge

proval of the state's allegedly invalid NPDES permit program. *See* 33 U.S.C. § 1369(b)(1); *Peabody Coal Company v. Train*, 518 F.2d 940, 941–43 (6th Cir.1975) (dismissal of challenge to state plan under Section 1369(b)(1) as untimely); *Sun Enterprises, Ltd. v. Train*, 532 F.2d 280, 290–291 (2d Cir.1976) (same with respect to a federal permit, *see* note 8, *infra* ).[9]

This case is clearly distinguishable from *Sierra Club v. Indiana-Kentucky Electric Corporation*, 716 F.2d 1145, 1148–51 (7th Cir.1983), in which state environmental standards under the different procedures of the Clean Air Act were held to be unenforceable in a federal action because a state court had found that the standards had not been properly promulgated pursu-

ant to state law. In contrast, in this case, there is no ruling by a state court that any NPDES permits issued by the DEP are invalid for procedural reasons.[10] Furthermore, *Sierra Club v. Indiana-Kentucky Electric Corporation, supra*, 716 F.2d at 1150–51, stands for the proposition that state courts are the preferred, if not the mandatory, forum in which to challenge a state's promulgation of environmental standards.

■ For the reasons stated above, the defendant may not raise the issue of the validity of its NPDES permit in this enforcement proceeding.[11] *Cf. Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287, 98 S.Ct. 566, 574, 54 L.Ed.2d 538 (1978) ("narrow inquiry" in criminal en-

under 33 U.S.C. § 1342(b) to a federal permit; no equitable tolling for untimely challenge to discharge permit where defect allegedly arose after the 90-day statute of limitations expired because defendant had actual or constructive knowledge of the defect and, in any event, defendant failed to take any action within 90 days of when it admitted knowledge of the defect). In light of this failure to make any challenge, timely or otherwise, to the validity of its NPDES permit until faced with an enforcement action in federal court, the defendant is estopped from attacking the validity of its NPDES permit under state law in this forum.

9. Presumably, the defendant also could have instituted an action in state court to compel DEP to promulgate the regulations that it thought were necessary.

10. The Commissioner of DEP has rejected administrative challenges to the legality of the state's NPDES permit process. *See* Proposed Decision and Final Decision, *In re United Technologies Corporation, Pratt & Whitney Aircraft Group, NPDES permit # CT 000 1376*, Exhibits 1 and 2, *attached to* Affidavit of Katherine H. Robinson (executed Jan. 14, 1985) ("Robinson Aff. I"); Proposed Decision and Final Decision, *In re United Technologies Corporation, Pratt & Whitney Aircraft Group, NPDES permit # 000 1384, attached to* Affidavit of Katherine H. Robinson (executed Aug. 13, 1985) ("Robinson Aff. II"). The appeals of the final decision in those cases, *see* Robinson Aff. I, Ex. 3; Robinson Aff. II, Ex. 3, have been withdrawn. *See* Robinson Aff. I, ¶ 5; Robinson Aff. II, ¶ 6.

11. *Cf. Appalachian Power Co. v. Environmental Protection Agency*, 579 F.2d 846, 854–55 (4th Cir.1978) (suggesting in *dictum* that failure to pursue a challenge in state court could deny the

party standing to raise the challenge in federal court.

Assuming *arguendo* that the defendant properly could attack the validity of its NPDES permit in this proceeding and that regulations underlying the permit were not properly promulgated, it is still unlikely that the defendant could prevail on this issue. First, there is authority to support the proposition that NPDES permits are enforceable prior to the adoption of supporting regulations. *See Natural Resources Defense Council v. Train*, 510 F.2d 692, 709 (D.C.Cir. 1974) (validity of permits issued by EPA prior to promulgation of regulations); *United States v. Velsicol Chemical Corp.*, 438 F.Supp. 945, 950 (W.D.Tenn.1976) (same in enforcement action); *United States v. Cutter Laboratories, Inc.*, 413 F.Supp. 1295, 1295–99 (E.D.Tenn.1976) (same). This case is clearly distinguishable from *Sierra Club v. Indiana-Kentucky Electric Corporation, supra*, 716 F.2d at 1153–54 (standards that state improperly promulgated under the Clean Air Act have no interim application; remedy is for EPA to implement standards). As noted above, the standards in that case had been successfully challenged in state court on procedural grounds whereas the standards in this case have not.

Second, the defendant would not necessarily prevail, even if it is correct in arguing that the NPDES permit's discharge limits are invalid. In this respect, the defendant's argument proves too much. If the NPDES permit is indeed invalid, every discharge by the defendant might be illegal because no discharge is permitted in the absence of an NPDES permit. *See* 33 U.S.C. §§ 1311(a), 1342. The defendant's argument that its NPDES permit, which it alleges to be invalid but never bothered to challenge, allows it to discharge effluents but imposes no enforceable duty on it to limit its discharge is unpersua-

forcement proceeding concerning violation of environmental standard does not include examination of the validity of the procedures used to promulgate that standard).

## IV. *Summary Judgment for Plaintiffs*

Courts have granted summary judgment for plaintiffs in numerous citizen suits brought pursuant to Section 1365 on the issue of liability. The decisions in these cases were based on findings of strict liability derived from discharge data reported in defendants' DMRs that exceeded levels allowed by NPDES permits. *See, e.g., NJSPIRG I, supra,* 602 F.Supp. at 1399–1400, *NJSPIRG v. Fritzsche, Dodge & Olcott,* 579 F.Supp. 1528, 1528–39 (D.N.J.), *aff'd, NJSPIRG IV, supra,* 759 F.2d at 1139; *NJSPIRG III, supra,* 22 Env't Rep. Cas. (BNA) at 1151–54; *Sierra Club v. Raytheon Co., supra,* 22 Env't Rep.Cas. (BNA) at 1051–52, 1055; *Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd.,* Civ. No. 84–0366–R (E.D.Va. Aug. 28, 1984) (Merhige, J.); *Chesapeake Bay I, supra,* at 1556–60; *Sierra Club v. Simkins Industries, Inc., supra,* at 1126–27. It is undisputed that the defendant's DMRs show that the defendant violated the terms of its NPDES permit on at least 174 occasions.[12] In these circumstances, the plaintiffs' Motion for Summary Judgment should be granted.

### *Conclusion*

For the reasons stated above, the plaintiffs' Motion for Partial Summary Judgment is granted and the defendant's Motion to Dismiss is denied.

If the parties are unable to reach agreement by October 15, 1985 on the relief that ought to be granted as a result of this ruling, the parties shall file by that date proposed orders and memoranda with respect to the relief that would be appropriate in these circumstances. In preparing their papers on the issue of relief, the parties shall acquaint themselves with decisions by other district courts on the subject. *See, e.g., Chesapeake Bay II, supra,* at 1552–65.

It is so ordered.

---

sive. The result suggested by the defendant would allow it to flout its NPDES permit that it relied on and tacitly accepted for years until faced with a citizen suit in federal court that seeks to enforce the permit.

12. The defendant's bald assertion that 'DMR's cannot be used as the basis for strict liability under the [Act] since these reports do not accurately reflect the amount of effluents being discharged due to laboratory error[,]" *see* Defendant's Memorandum III at 17, does not present a disputed issue of material fact required to avoid summary judgment pursuant to Rule 56, Fed.R. Civ.P. *See Quinn v. Syracuse Model Neighborhood Corp.;* 613 F.2d 438, 445 (2d Cir.1980) ("litigant opposing summary judgment 'may not rest upon mere conclusory allegations' ... [but] must bring to the district court's attention some affirmative indication that his version of rele-

vant events is not fanciful"). The absence from the record of any significant evidence supporting the defendant's assertion clearly distinguishes this case from *Friends of the Earth, supra,* 618 F.Supp. 532, 22 Env't Rep.Cas. at 1146 (summary judgment based on data in DMRs not appropriate where "defendant ... offered a multitude of justifications for the alleged violations, along with convincing arguments why many of the alleged violations should not actually constitute violations [*e.g.,* typographical mistakes in the DMRs].") The defendant's feeble attempt to dispute the accuracy of its DMRs is less substantial than similar challenges in the cases cited in the accompanying text in which summary judgment was granted based only on defendants' DMRs.