**CONNECTICUT FUND FOR the ENVIRONMENT and Natural Resources Defense Council, Inc.**

v.

**RAYMARK INDUSTRIES, INC.**

Civ. No. H–83–1081(JAC).

United States District Court,
D. Connecticut.

March 31, 1986.

James Thornton, New York City, Katharine H. Robinson, Hartford, Conn., for plaintiffs.

S. Robert Jelley, New Haven, Conn., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This citizens' suit pursuant to the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("the Act"), is before the court on a motion for partial summary judgment filed by the

Connecticut Fund for the Environment and the Natural Resources Defense Counsel ("the plaintiffs").[1]

The plaintiffs are seeking a declaration that Raymark Industries, Inc. ("the defendant") violated the Act on 164 occasions by discharging effluents in excess of the levels prescribed in its National Pollution Discharge Elimination System ("NPDES") permit CT0001881 into navigable waters of the United States. The plaintiffs contend, on the basis of discharge monitoring reports ("DMRs") filed by the defendant with the Connecticut Department of Environmental Protection, *see* Affidavit of James Thornton (filed March 19, 1984) ("Thornton Affidavit"), Exhibit D, that there remain no genuine issues of material fact with respect to the liability of the defendant under the Act.

The defendant does not dispute that its effluent discharges exceeded the limits allowed by its NPDES permit on the 164 occasions cited by the plaintiffs. However, the defendant offers two arguments why certain of these permit violations ought not to give rise to liability under the Act. The court will consider each of the defendant's arguments in turn.

### I.

The defendant first argues that liability under the Act cannot arise from excessive discharges into its "polishing lagoon," where waste materials allegedly are treated and held for several hours before they are released into the concededly navigable waters of Ferry Creek, but can only arise from discharges from the lagoon into the

---

1. This is one of a number of similar cases brought by the plaintiffs that were transferred to the docket of the undersigned with the consent of the transferor judges and pursuant to an Order of Transfer and Reassignment (entered Aug. 2, 1983 by Chief Judge T.F. Gilroy Daly). The court has previously ruled upon several defenses common to the defendants in all of these actions. For example, the court ruled that the plaintiffs have standing to bring such actions, *see* Certified Official Transcript of Oral Ruling Delivered at a Hearing Held on November 19, 1984 (filed Nov. 26, 1984), and that such actions are governed by the five-year statute of limitations applicable to government suits under the Clean Water Act. *See Connecticut Fund for the Environment, et al. v. The Job Plating Company,* 623 F.Supp. 207, 213 (D.Conn.1985) (*"Job Plating"*). The defendant in this action, while not conceding the correctness of the court's earlier rulings, has not attempted to distinguish this case from *Job Plating* with respect to the standing and statute of limitations issues. Accordingly, the court adopts by reference the reasoning of its rulings in *Job Plating* and addresses in this ruling only those issues of law that were not decided in the earlier case.

creek. The defendant reasons that some of the solids and metals in its discharges may be deposited in the lagoon and therefore may never reach navigable waters; the defendant likewise contends that the pH levels of different waste streams may neutralize one another as they are held in the lagoon.

■ A citizens' suit under the Act may challenge violations of "a permit or condition thereof issued under section 1342 of this title." 33 U.S.C. § 1365(f). *See Environmental Protection Agency v. State Water Resources Control Board,* 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976) ("[u]nder NPDES, it is unlawful for any person to discharge a pollutant without obtaining a permit *and complying with its terms* ") (emphasis added). It cannot be disputed that the limitations on discharges into the "polishing lagoon" are conditions of a permit issued to the defendant by the State of Connecticut pursuant to 33 U.S.C. § 1342. Moreover, counsel for the defendant conceded at oral argument on March 27, 1986, that the state could validly impose these conditions on the defendant.[2]

There is nothing in the language or legislative history of the Act to suggest that a citizens' suit may seek to enforce only those conditions of an NPDES permit that regulate the quality of a discharge immediately before its release into navigable waters. Indeed, the Senate Report on the Act states that a citizens' suit may be brought to enforce *"any condition* of any permit issued under section 402 [33 U.S.C. § 1342]." Federal Water Pollution Control Act Amendments of 1972, S.Rep. No. 414, 92nd Cong., 1st Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 3668, 3747 (emphasis added).

Furthermore, the rule urged by the defendant would frustrate the Congressional intent to provide for the expeditious handling of enforcement suits brought pursuant to the Act. As the Senate Report discussing the citizens' suit provisions of 33 U.S.C. § 1365 observed:

> An alleged violation of an effluent control limitation or standard[ ] would not require reanalysis of technological [or] other considerations at the enforcement stage. These matters will have been settled in the administrative procedure leading to the establishment of such effluent control provision. Therefore, an objective evidentiary standard will have to be met by any citizen who brings an action under this section.

S.Rep. No. 414, *supra, reprinted in* 1972 U.S.Code Cong. & Ad.News at 3745. The defendant apparently would have the federal district courts in enforcement suits decide such questions as whether the pollutants in a given discharge could have "settled out" between the point at which the discharge was monitored and the point at which it entered navigable waters. This would require the courts to engage in "reanalysis of technological [or] other considerations at the enforcement stage" in a manner that was not intended by Congress.

Accordingly, the court must reject this defense against the plaintiffs' motion for partial summary judgment.

## II.

The defendant also contends that it cannot be held liable under the Act for certain violations of the "average daily concentration"[3] limits prescribed by its NPDES permit. The "general conditions" of the defendant's permit allow the use of "four-hour composite samples"[4] to measure the

2. The defendant could have challenged these permit conditions in an administrative action brought pursuant to C.G.S. § 22a–430, and could have appealed an adverse administrative decision to the Connecticut Superior Court pursuant to C.G.S. § 22a–437. However, the defendant declined to do so.

3. An "average daily concentration" is defined as "[t]he average concentration during a 24-hour period of an operating day." *See* Thornton Affidavit, Exhibit B.

4. A "four-hour composite sample" is defined as "a mixture of aliquot samples obtained at regular intervals" over a four-hour period. *See* Thornton Affidavit, Exhibit B.

"average daily concentrations" of particular effluents. *See* Thornton Affidavit, Exhibit B. The defendant, despite having consistently measured "average daily concentrations" in this manner and despite having conceded at oral argument that the state may validly include such "general conditions" in its NPDES permits, nonetheless argues that "four-hour composite samples" do not provide a sufficiently accurate measurement of "average daily concentrations" to establish liability under the Act.

█ This defense must also be rejected in light of the statutory language and legislative history indicating that "any condition" of an NPDES permit may be challenged in a citizens' enforcement suit. Moreover, the "reanalysis of technological [or] other considerations at the enforcement stage" could not be avoided if the courts were required to consider the accuracy of the monitoring procedures prescribed in NPDES permits. Of course, the defendant could have challenged these procedures before the Department of Environmental Protection, and appealed any adverse decision to the state Superior Court, pursuant to C.G.S. §§ 22a–430 and 22a–437.

It is also significant that nothing in the NPDES permit required the defendant to determine its "average daily concentrations" by taking "four-hour composite samples." Instead, the permit provided that "[t]he minimum procedure for determining the average daily concentration will be a four-hour composite." *See* Thornton Affidavit, Exhibit B. The defendant was therefore free to sample its discharges over a more extended period but apparently chose not to do so.

### Conclusion

For the reasons stated above, the court holds that there are no disputed issues of material fact with respect to the defendant's liability under the Act for 164 violations of its NPDES permit. Accordingly,

the plaintiffs' motion for partial summary judgment is hereby granted.

It is so ordered.